IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOEL THOMAS HALL
1904 3rd Street N.E., #4
Washington, D.C.  20002

     VS.

CHIEF CATHY LANIER
Metropolitan Police Department
300 Indiana Ave., N.W.
Washington, DC  20001
individually and in her official capacity

and

METROPOLITAN POLICE DEPARTMENT
300 Indiana Ave., N.W.
Washington, DC  20001

and

DISTRICT OF COLUMBIA
441 4th Street, N.W.
Washington, DC  20001 and
1350 Pennsylvania Ave N.W.
Washington, DC  20004

and

OFFICER  JOSE FREEMAN,
OFFICER  VENSON WYTCH,
an UNKNOWN OFFICER
of the Metropolitan Police Department
individually and in their official capacities
5th District Police Headquarters
1805 Bladensburg Road N.E.
Washington, DC  20002
individually and in their official capacity

and

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
))

Case No.  1:07-cv-00970 RBW

**RECEIVED**

JUL 1 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

OTHER UNNAMED OFFICERS
Metropolitan Police Department

individually and in their official capacities

## Amended COMPLAINT

Joel Thomas Hall, Plaintiff, files this claim against the Defendants, the District of Columbia,

Chief Cathy Lanier, the District of Columbia Metropolitan Police Department, (hereinafter

"the MPD") and Officer Venson Wytch (hereinafter "Ofc. Wytch"), Officer Jose Freeman

(hereinafter "Ofc. Freeman") and several unknown Supervisors of the Defendant MPD

Officers and several unknown MPD Officers.

### I. Jurisdiction

1.      This action arises under the Constitution of the United States, the Civil Rights Act, 42

U.S.C. § 1983; Act, 42 U.S.C. § 1985(3); Act, 42 U.S.C. § 1986, Civil Rights Acts, the laws of

the District of Columbia, particularly §§ 12-301 and 12-309, and the common law.

2.      On February 2, 2007, and May 10, 2007, Plaintiff, pursuant to D.C. Code §12-309

provided written notice to Defendant, the District of Columbia, of his intent to sue based on

the incidents which are the basis of the complaint; Attachment A, attached to the original

complaint, is a true copy of this notice.

3.      Venue is placed in the District of Columbia because that is where the Defendants are

employed and where the events complained of occurred.

### II. PARTIES

4.      Plaintiff, Joel Thomas Hall is now, and at all times relevant to this claim,

has been a resident of the District of Columbia.

5.     Defendants Ofc. Wytch, Ofc. Freeman and the unknown Metropolitan Police Department Officers, who are sued in their individual and official capacities are now, and were at all relevant times, Officers of the MPD.

6.     Defendant, Chief Cathy Lanier is presently the Chief of the Metropolitan Police Department the position formerly occupied by Charles Ramsey, who is sued in her individual and official capacities are now and Chief Ramsey was the, Chief of the District of Columbia Metropolitan Police Department.  Chief Ramsey had, and Chief Lanier presently has ultimate supervisory responsibility for the District of Columbia Metropolitan Police Department.

7.     At all times relevant to this action, the Defendant MPD Officers and Chief Lanier were acting under color of law under their authority as Police Officers of the District of Columbia, and under color of the statutes, ordinances, regulations customs and usage of the District of Columbia.

8.     Defendant, the District of Columbia, is a municipality that owns, operates, manages, directs, and controls the MPD and is being sueded for the unlawful actions of the MPD and its Officers and for having unconstitutional policy, practices, customs, and a deliberate indifference to violations of persons, including Mr. Hall's rights protected under the U.S. constitution, the laws of the District of Columbia and civil and common law.

9.     Defendant, the MPD is the law enforcement agency of the District of Columbia and is being sued for the unlawful actions of the MPD Officers and Chief Ramsey and Chief Lanier and for having unconstitutional policy, practices, customs, and a deliberate indifference to violations of persons, including Mr. Hall's

rights protected under the U.S. constitution, the District of Columbia and civil and common law.

### III.    STATEMENT OF FACTS

10.    Plaintiff, Joel Thomas Hall (hereinafter "Mr. Hall" or "the Plaintiff") is a 19-year old college student, who has never been in trouble with the law resides in Washington, D.C.

11.    After returning to live in the District of Columbia in 2004, after living in Pittsburg, Pennsylvania for nearly two years, several MPD Officers repeatedly subjected Mr. Hall to repeated, threats of bodily injury, assaults, battery, illegal detainments, illegal searches and seizures and violations of his right to free speech, as well as other U.S. constitutional violations and infringements of other rights guaranteed to him under the laws and statutes of the District of Columbia, civil and common law.

12.    On various dates, from June of 2004 to March of 2007; (On or about November 16, 2004, on or about May of 2005, on or about June of 2005, on or about April of 2006, on or about July 20, 2006, on or about two different occasions in August of 2006, on or about September 14, 2006, on or about October of 2006, on November 15, 2006, on or about March 1, 2007 and on or about March 4, 2007) when Mr. Hall stood in front of or sat in front of the apartment building he lived in, attempted to walk freely around the neighborhood he lived in or any of his friends lived in, attempted to go to stores to by anything for himself or his family members, attempted to visit his family members or to visit his friends, or to engage in just about any activity outside of his home MPD Officers would subject Mr. Hall to repeated threats of bodily injury, unreasonable and unlawful detainments, illegal searches and seizures, harassment and interfered with or denied him the rights and

privileges other citizens are not denied or interfered from rightful enjoyment of without any legal justification or basis.

13.     The MPD Officers that denied Mr. Hall the rights and privileges other citizens are not denied or interfered from rightful enjoyment of, without any legal justification or basis, never witnessed Mr. Hall commit or attempt to commit any crime or never had any reasonable suspicion. Yet, several Officers of the MPD continuously stopped Mr. Hall to question him about why he was outside of his home and commanded him not to speak or he would face the consequence of being arrested, seized his photo-identification card and told to him to go inside his home.

14.     On November 15, 2006, at approximately 8:50 p.m., Mr. Hall, was tapping on the door of a neighborhood corner store, McKinley Market located at 321 T Street, NE., to get the attention of employees inside.

15.     Employees of the store had a friendly relationship with Mr. Hall who lived just one block from the store. Mr. Hall would regularly go to the corner store, nearly every day, to buy items for himself and his family. While at the corner store he would say, "Hello," to the employees and often had brief conversations with the employees.

16.     On previous occasions, when the store was closed the store employees would open the door when Mr. Hall tapped on the door and allowed Mr. Hall to enter the store to buy the items he wanted.

17.     On November 15, 2006, Ofc. Wytch, Ofc. Freeman, and one other unknown MPD Officer pulled up in front of the store at 3rd and T Street N.E. in a marked MPD vehicle. One of the MPD Officers flashed a light into Mr. Hall's eyes from the marked MPD vehicle. Mr.

Hall asked that the light not been shined into his eyes and asked the MPD Officers to stop harassing him for no reason.

18.    While still in the marked MPD cruiser one of the three MPD Officers asked Mr. Hall what was he doing? Mr. Hall replied that he was going to the store. One of the three MPD Officers told Mr. Hall that the store was closed. Mr. Hall responded that the store did not close until 9:00 p.m. (Mr. Hall was surprised when the MPD Officers stated that the store was closed because he had always known the store to close at 9:00 p.m.).

19.    Mr. Hall expressed his concerns of being harassed and criticized other MPD Officers' continuous violations of his U.S. constitutional rights as well as the law and statutes of the District of Columbia, civil and common law. One of the MPD Officers responded, "Oh, you have an attitude."

20.    The MPD Officers disagreed with Mr. Hall's speech and jumped out their vehicles and rushed very fast towards Mr. Hall with one of three MPD Officers pointing a gun at Mr. Hall, and one of the MPD Officers asked Mr. Hall did he have anything on him they needed to know about. Mr. Hall responded, "No." Two of the MPD Officers immediately jumped on the back of Mr. Hall pushing him into a wall in the corner in front of the store.

21.    One of the MPD Officers commanded Mr. Hall to put his hands on the wall and another MPD Officer commanded him to put his hands behind his back. The MPD Officers made inconsistent commands causing Mr. Hall to become confused so he just stood still because he did not know what the MPD Officers wanted him to do. Instead of providing Mr. Hall with a consistent command or giving Mr. Hall the opportunity to comply with at least one of the inconsistent commands the three MPD Officers immediately jumped on the back of Mr. Hall and attacked him.

22.     On November 15, 2006, two of the MPD Officers grabbed the left and right arms of Mr. Hall. Mr. Hall asked the MPD Officers what was going on. The MPD Officers apparently did not agree with Mr. Hall questioning their conduct so, the third MPD Officer threw him on the ground, and restrained his right arm by pulling it back and high in the air to handcuff him causing injury to his shoulder.

23.     Then while Mr. Hall was still on the ground two of the MPD Officers sat on top of Mr. Hall's back with their knees in his back. Mr. Hall could not breathe during a period of the time the two MPD Officers were on his back and had difficulty breathing during other periods of time, his heart was racing and he felt scared for his life. Mr. Hall believed that the MPD Officers were trying to kill him.

24.     While Mr. Hall was still on the ground with two of the MPD Officers on his back, one of the MPD Officers pointed a gun at the non-resistant Mr. Hall who was not only fully complying with the MPD Officers but was actually attempted to assist the MPD Officers to handcuff his left wrist which was underneath him. Mr. Hall's left arm was trapped under his body after he was thrown to the ground and the two MPD Officers,' that were sitting on Mr. Hall's back, body weight prevented his arm from being moved.

25.     Mr. Hall then felt a blow to the back of his head which forced his skull to hit the concrete alley pavement on the ground then bounce off the concrete alley pavement on the ground and then hit the ground a second time knocking him unconscious for a few seconds.

26.     On November 15, 2006, when Mr. Hall regained consciousness from the contusion caused to his head he was still on his stomach. One of the MPD Officers was going through one of his pockets. A second MPD Officer picked Mr. Hall up off the ground by grabbing the back pockets of Mr. Hall's pants causing his pants to come down past the top of his buttocks

showing the top of his butt and underclothing. Then without securing Mr. Hall's body from hitting the ground, the unknown MPD Officer let Mr. Hall's pants pocket go causing Mr. Hall's body to hit the ground.

27.    The MPD Officers started to ask Mr. Hall questions and tried to intimidate the Plaintiff by being very hostile, acting belligerently by yelling very loudly into Mr. Hall's face and using profanity which included the question of asking him, "Where the hell you live at."

28.    Another MPD Officer removed Mr. Hall's wallet from his pants pocket without his consent. The MPD Officers also removed Mr. Hall's photo-identification card from his wallet without his consent.

29.    One of the MPD Officers turned Mr. Hall over to allow him to sit on his buttocks. Mr. Hall was told that he was going to jail. One of the MPD Officers asked the other two MPD Officers if they had a knife to cut off Mr. Hall's shoestrings.

30.    Then the two employees that worked in the store at 4th and T Street N.E. came out of the store. One of the three MPD Officers asked if the store closed early on that night. One of the employees stated, "Yes." The two employees kept on walking.

31.    The MPD Officers arrested Mr. Hall for no apparent charge. Mr. Hall's belt and watch were taken off. One of the MPD Officers told Mr. Hall that a transport unit was coming to get him.

32.    Ofc. Freeman pulled Mr. Hall up from off the ground and pushed Mr. Hall against a gated fence. Mr. Hall informed one or more of the MPD Officers that he was going to get an attorney and that he was going to do something about their illegal actions and that he did not want to speak with them.

33.    While still being handcuffed, Mr. Hall was surrounded by the MPD Officers and Ofc.

Freeman threaten Mr. Hall by stating that Mr. Hall could have been beaten like the Mexican

man was beaten in a widely publicized case in Los Angeles, California.

34.    Mr. Hall asserts that after receiving information from dispatch, the National Crime

Information Center (NCIC) database and/or the Washington Area Law Enforcement System

(WALES) system the MPD Officers started to act nice. One of the MPD Officers asked Mr.

Hall if he wanted to go home or to jail. Mr. Hall stated, "I want to go home."

35.    The MPD Officers continued to surround and talk to Mr. Hall about different things;

their children, their life and how to become a police officer. One of the MPD Officers stated

that if Mr. Hall sees him in the future Mr. Hall can always speak to him by saying, "Hi."

36.    The MPD Officers persisted in speaking with Mr. Hall while he stood dazed and barely

conscious from the contusion to his head for at least ten to fifteen minutes. One of the MPD

Officers searched the area near Mr. Hall. The MPD Officers then asked Mr. Hall if he wanted

to go to the hospital. He replied that he did not because at that time he did not know and was

not aware of the damages done, particularly to his head and did not immediately remember

being unconscious. Mr. Hall was then released from custody.

37.    After leaving from the custody of the three MPD Officers Mr. Hall went home. A

friend of Mr. Hall, Jamal Gaskins, came to Mr. Hall's home. Mr. Gaskins stated that he

witnessed the three MPD Officers' misconduct. Mr. Gaskins stated that his mother Lynette

Gaskins called 911 and the 5th District Police Headquarters to make a complaint about the

abusive behavior of the three MPD Officers. Mr. Gaskins stated that Sergeant Wallace, the

supervisor of one or more of the three MPD Officers, wanted to speak with Mr. Hall. Instead

of calling Sergeant Wallace Mr. Hall went to the 5th District Police Headquarters to make a complaint.

38.    While at the 5th District Police Headquarters Mr. Hall felt so faint that he asked to be taken to a hospital.  An ambulance was called, EMS workers responded to the call at 5th District Police Headquarters, and took the injured Mr. Hall to the Emergency Department at Providence Hospital.

39.    As a result of the unreasonable and excessive force used upon Mr. Hall on November 15, 2006, Mr. Hall suffered injuries to his forehead, head, scalp, neck, face, shoulder, one of his knees, one of his ankles, and his elbows as a result of the unlawful force used by the MPD Officers.  The treating physician at Providence Hospital's General Emergency Department diagnosed Mr. Hall with having a contusion of the head, scalp, face and neck.

40.    As a result of the injuries, Mr. Hall suffered on November 15, 2006, by the use of force by the MPD Officers Mr. Hall suffers from reoccurring headaches, twitches consisting of involuntarily head jerks, dizziness and frequent blurred vision.  Mr. Hall also complains of feeling early signs of depression such as a sense of helplessness and hopelessness, depressed mood, loss of interest in the activities of daily living, unusual irritability and a diminished ability to think or concentrate.

41.    As a result of several MPD Officers intentional, reckless, and malicious disregard for the Plaintiff's rights from June of 2004 to March of 2007, by repeatedly subjecting Mr. Hall to repeated, threats of bodily injury, assaults, battery, illegal detainments, illegal searches and seizures and violations of his right to free

speech, as well as other U.S. constitutional violations and infringements of other

rights guaranteed to him under the law and statutes of the District of Columbia,

civil and common law Mr. Hall suffered and continuous to suffer from discomfort,

inconvenience, annoyance, pain and suffering, humiliation, embarrassment,

nervousness, injury to his reputation, fright, mental distress, mental suffering, and

mental anguish.

## IV.    FIRST CAUSE OF ACTION

### CIVIL RIGHTS CLAIMS UNDER ACT, 42 U.S.C. § 1983

### FIFTH AMENDMENT VIOLATIONS

### Discriminated On The Basis of His Sex and Race

### In Violation of the Equal Protection Clause

42.    Plaintiff hereby realleges and incorporates by reference herein paragraphs 1 –41 of this

complaint.

43.    Several MPD Officers, including the defendant MPD Officers and their supervisors,

Chief Cathy Lanier and former Chief Charles Ramsey, the District of Columbia and the MPD

discriminated against the Plaintiff on the basis of his sex in violation of the equal protection

clause when, on various dates, from June of 2004 to March of 2007 when Mr. Hall stood in

front of or sat in front of the apartment building he lived in, attempted to walk freely around

the neighborhood he lived in, attempted to go to stores to by himself or his family members

items, attempted to visit his family members or to visit his friends, or to engage in just about

any activity outside of his homes several MPD officers violated Mr. Hall's rights under the

U.S. constitution, the laws and statutes of the District of Columbia, civil and common law.

44.    Several MPD Officers, including the defendant MPD Officers and their supervisors,

Chief Cathy Lanier and former Chief Charles Ramsey, the District of Columbia and the MPD

deprived Mr. Hall of Due Process by denying him of his First, Fourth, and Fifth Amendments

constitutionally protected interests when Mr. Hall was subjected to repeated threats of bodily

injury, unnecessary and unlawful detainments, illegal searches and seizures, one false arrest,

harassment and interfered with and denied him of the privileges other citizens are not denied or

interfered from rightful enjoyment of and he was deprived of those constitutionally protected

interests without due process of law when, although having no probable cause or legally

sufficient suspicions of criminal activity or other legally justified basis several MPD Officers

did the following:

        a.    On or about November 16, 2004, while observing MPD Officers search

and arrest an unknown individual during a traffic stop near the 4300

block of Hunt Place N.E., Washington, D.C. 20019, Mr. Hall's friend

called an unknown MPD Officer working on vice squad, "GI Joe." The

unknown MPD Officer dressed in camouflage approached Mr. Hall and

forcibly grabbed his right arm and pulled him into an alley, behind a

store, in the dark while no other person was apparently visible. The

MPD Officer threaten Mr. Hall by stating, "I am going to sleep your

ass." I am going to sleep your ass is a slang phrase meaning that a

person intends to hit the person and knock them unconscious. Two or

more individuals were hidden in the dark but were in the alley and one

of the individuals coughed which got the attention of the unknown MPD

officer. The unknown MPD Officer told Mr. Hall, "You better be lucky

they were over there because I was about to knock you out." Mr. Hall did not want or consent to the MPD Officer's use of excessive force by grabbing his arm and unreasonably detaining him.

b.    On or about May of 2005, Mr. Hall and six friends were leaving Union Station at 50 Massachusetts Avenue, NE. Nearly ten police cars pulled up and more than fifteen MPD Officers exited their marked police cars pointing their guns at Mr. Hall and his six friends. The MPD Officers commanded that Mr. Hall and his friends put their face down on the ground, handcuffed them, and told them to sit on their knees to wait for a witness identification. It took the witness nearly 45 minutes to arrive at the scene and once at the scene it took the witness to look at Mr. Hall and his six friends for nearly another five to ten minutes before the Caucasian female who claimed to have been robbed acknowledged that Mr. Hall and his friends were not involved in the robbery. Mr. Hall's knees were in pain from having to sit handcuffed while on his knees for nearly a hour. Mr. Hall did not consent to the stop and did not consent to being unreasonably detained by being held on his knees for a hour during the investigation by the MPD Officers.

c.    On or about June of 2005, Mr. Hall was visiting a friend in River Terrace, a neighborhood located in N.E, when Mr. Hall and several of his friends were detained by several MPD Officers. One of the MPD Officers commanded Mr. Hall to put his hands on a marked police car that was extremely hot from the sun. Mr. Hall complied with the MPD

Officers and burned his hands when he placed his hands on the hot MPD car. The MPD Officers searched Mr. Hall and his friends. Mr. Hall and his friends were told to sit on a sidewalk curb and to put their hands behind their backs. As one of Mr. Hall's friends began to sit down on the curb he realized there was some glass on the curb and attempted to move over to avoid sitting on the glass. MPD Officer Lynch tried to push the person on the glass. Mr. Hall stated that it was not right to attempt to push the friend onto the glass. MPD Officer Lynch, hit Mr. Hall's hat knocking the hat off Mr. Hall's head. Mr. Hall was next commanded to open his legs. Mr. Hall was complying with the command but before he got the chance to completely open his legs MPD Officer Lynch kicked Mr. Hall's leg to open his leg. Mr. Hall did not consent to the detainment and did not consent to the MPD Officer use of excessive force by knocking his hat off his head and kicking his leg or unreasonably detaining him.

d. Various times from 2004-2006, an unknown 6th District MPD Officer repeatedly illegally detained, search and seized Mr. Hall and required Mr. Hall to display his photo-identification card. Mr. Hall did not consent to the detainments, searches and seizures of his body or photo-identification card.

e. On or about July 20, 2006, Mr. Hall was sitting on a bridge in a opened public park at the 4300 block of Hunt Place N.E around 5:27 P.M; while it was still day light. An unknown MPD Officer told Mr. Hall to leave the

park and not return. The unknown MPD Officer also told Mr. Hall that if
Mr. Hall returned to the opened public park again he was going to arrest
Mr. Hall. The unknown MPD Officer told Mr. Hall he knew what he was
doing and stated that he knew Mr. Hall was selling drugs. Mr. Hall did not
want to be detained by the unknown MPD Officer and did not want to leave
the park but was commanded to do so by the unknown MPD Officer or he
would be arrested.

f.  On several occasions in August of 2006, Mr. Hall was sitting in front of the
apartment building he lived at and was commanded to go inside his home.
On or about August of 2006, unknown MPD Officers, in a marked MPD
police car with two other MPD Officers, flashed lights on Mr. Hall from a
marked MPD police car. The three MPD Officers got out of the marked
police car and questioned Mr. Hall, and asked him where he lived at. Mr.
Hall responded that he lived in the building he was sitting in front of. The
MPD Officers commanded that Mr. Hall show them his photo-
identification card. Mr. Hall complied with this command. The MPD
Officers looked at Mr. Hall's photo-identification card with a flash light
and one stated he does live here and Mr. Hall was commanded to go into
his home. Mr. Hall did not consent to being unreasonably detained, went
inside his home but did not want to comply with the command to go inside
his home and did not voluntarily consent to the seizure of his photo-
identification card.

g. A second time in August of 2006, Mr. Hall was sitting in front of his home when MPD Officers in a marked police car drove up and questioned Mr. Hall from their marked cruiser. The MPD Officers asked if Mr. Hall lived in the building. Mr. Hall stated that he did live in the building. The MPD Officers commanded that Mr. Hall go in the house. Mr. Hall asked the MPD Officer why he had to go in the house. The MPD Officers stated that a neighbor was complaining about noise although Mr. Hall was sitting in front of his apartment building alone and had made no noise. Mr. Hall did not want to go inside his home but complied with the MPD Officer's command.

h. Also, in August of 2006, Officer Hawkins on several occasions commanded Mr. Hall, several of his family members and friends to go home as they sat in front of the apartment building Mr. Hall lives in. A neighbor who was the only other person who lived in the building with Mr. Hall and his family asked the MPD Officer why was he harassing the children and told him that no one in the building had a problem with the children being out front of the apartment building. Officer Hawkins stated that the children were throwing trash out front. The man who lived in the apartment building with Mr. Hall stated that the children often cleaned up in front of the apartment building. He also told Officer Hawkins that he was going to call someone and make a complaint about Officer Hawkins's harassment of the children. Mr. Hall did not want to go inside his home but was commanded to do so by Officer Hawkins.

i.   On or about September 14, 2006, Mr. Hall was talking to a friend who lived

on the 300 block of Todd Place N.E. An unknown MPD Officer

approached Mr. Hall and asked Mr. Hall what he was laughing at. The

unknown MPD Officer grabbed Mr. Hall's arm. The unknown MPD

Officer told Mr. Hall that he should give him a ticket because his photo-

identification was split at the bottom. The MPD Officer told Mr. Hall that

he had an attitude problem and then threaten that he should "strip search"

Mr. Hall and "send him home naked." Mr. Hall did not consent to the

unreasonable detainment and the seizure of his photo-identification card or

the excessive force used by the unknown MPD officer.

j.   On or about October of 2006, Mr. Hall, several of his friends and his cousin

sat in front of Mr. Hall's home at 1904 3rd Street N.E. Mr. Hall went inside

his home and stayed inside of his home for approximately thirty minutes.

Mr. Hall decided to go back outside. As Mr. Hall was going outside of his

home two unknown MPD Officers began to knock on the door to gain

entrance to the common area of the building. Mr. Hall opened the door and

one of the unknown MPD Officers questioned Mr. Hall about whether or

not he was outside. Mr. Hall indicated that he was and that he lived there.

The unknown MPD Officer detained Mr. Hall by preventing him from

being able to exit the building and walk outside of the building by

continuing to ask Mr. Hall questions and commanding Mr. Hall to answer

his questions. Mr. Hall was unresponsive. The unknown MPD Officers

eventually left. Mr. Hall did not consent to the unreasonable detainment or

the violation of his First Amendment Right to not be compelled to speak.

Mr. Hall was compelled to speak because the MPD Officer used a hostile

tone; repeated questions when Mr. Hall attempted to remain silent and

further stood in front of the doorway with another MPD Officer preventing

Mr. Hall from exiting the apartment building which clearly showed that Mr.

Hall was not free to leave.

k.  On November 15, 2006, Ofc. Wytch, Ofc. Freeman and one unknown MPD

Officer assaulted, battered, falsely arrested, unnecessarily detained,

illegally searched and seized Mr. Hall and seized his photo-identification

card, threaten to inflict bodily harm upon the Plaintiff and never returned

his photo-identification card without probable cause or other legally

sufficient basis.  Mr. Hall did not consent to being assaulted, battered,

falsely arrested, unreasonably detained, threaten and did not voluntarily

consent to the unreasonable search and seizure or the unreasonable seizure

of his photo-identification card by the MPD Officers.

l.  On or about March 1, 2007, Mr. Hall was walking to a store while talking

to a friend on his cellular phone when three MPD Officers in a marked

MPD police car passed by Mr. Hall.  The three MPD Officers in the

marked car passed by Mr. Hall but eventually came back and meet up with

Mr. Hall on 3rd and Rhode Island Avenue, N.E. in Washington, D.C.  One

of the three MPD Officers asked Mr. Hall where he was going and where

he lived.  Mr. Hall responded that he lived down the street and was going to

the store.  The MPD Officers then asked Mr. Hall, "What are you getting

from the store." One of the three MPD Officers asked for Mr. Hall's

photo-identification card and wrote information in a book. Mr. Hall was

then given his photo-identification card back and then was allowed to

continue to walk to the store. Mr. Hall did not want to stop and present his

photo-identification card to the MPD Officers. When the MPD Officers

came back and met up with Mr. Hall, Mr. Hall was scared and frighten

because he was not engaged in any criminal activity and did not know what

the MPD Officers were attempting to do. Mr. Hall did not consent to being

unreasonably detained and did not voluntarily consent to display his photo-

identification card. Mr. Hall was also compelled to speak against his will

because he did not want to tell the MPD officers where he was going or

what he intended to buy from the store but feared the MPD Officers.

m.  On or about March 4, 2007 near 4th and W Street N.E. in Washington,

D.C., Mr. Hall attempted to throw something in a trash can but the item fell

upon the ground. Mr. Hall heard a voice say pick it up without even giving

Mr. Hall the opportunity to pick up the item. Mr. Hall did not see a person

nearby other than the person he was with so he stood puzzled about where

the voice came from. A MPD Officer was in a car nearby and approached

Mr. Hall. Mr. Hall was able to identify the MPD Officer as S. Brown. Ofc.

S. Brown asked Mr. Hall for his photo-identification card. Ofc. S. Brown

stated that if Mr. Hall did not hurry up and given him his photo-

identification card he would take it from him. Mr. Hall complied with Ofc.

S. Brown and after Mr. Hall's identity was run through the system (Wales

and/ or the National Crime Information Center (NCIC) database) Ofc. S.
Brown returned Mr. Hall's photo-identification card. Mr. Hall did not
consent to being unreasonably detained and did not voluntarily consent to
the unreasonable seizure of his photo-identification card.

45.    If the Plaintiff was of another sex or race these incidents previously listed in Section
One Civil Rights Claims under 42 U.S.C. § 1983 Paragraph 44 subsections a-m, would not
have occurred. Members of the MPD Officers, including the defendant MPD Officers and
their supervisors, Chief Cathy Lanier and former Chief Charles Ramsey, the District of
Columbia and the MPD had and have a policy, practice and custom of discriminating against
young, black and/or African-American males by:

a.    targeting poor, predominately black and/or African-American, under-classed
neighborhoods by labeling them as hot spots. Targeting young, black males by
constant surveillance and investigations without having probable cause, reasonable
suspicions or any other legally justified basis that the males are engaged in criminal
activity but only have knowledge that the males are black and/or African-American,
young and live in or are visiting an area targeted as being a hot spot,

b.    unlawfully stopping to question young, black males without having probable
cause or any other legal basis to do so,

c.    unlawfully searching and seizing young, black males without having probable
cause or any other legal basis to do so,

d.    racially profiling young, black males by stopping, questioning, illegally
detaining and searching young, black males on suspicions based on the color of their
skin without having probable cause or other legal basis to do so,

e.      failing to properly investigate complaints or suspicions of criminal activities

because of racist, prejudiced and racially bigoted, preconceived notions that young,

black males are criminals and engaged in criminal conduct and upon arriving at the

scene of complaints or having unreasonable suspicions of criminal activities MPD

Officers arrest young, black males without having probable cause or other legally

sufficient basis to do so,

f.      using excessive force against young, black males based on preconceived,

stereotypical, racial notions that young, black males are a threat and prone to violence,

g.      denying young, black males the right to speak based on the racist notion that it

is inappropriate for black or African-American persons to complain about police

misconduct and thus viewing any black person who speaks out against police

misconduct without engaging in illegal conduct that would making that speech outside

the protections of the First Amendment as abnormal or a threat and therefore violating

these persons rights to speak by using excessive force against them, falsely arresting

them, illegally detaining, searching and seizing them and violating these persons

constitutional protected rights,

h.      denying or interfering with young, black males rights to enjoy privileges other

citizens of different races, cultural ethnicities, and female citizens enjoy without any

legally sufficient basis; those rights includes being able to walk freely to and from their

homes, being able to go to stores to buy themselves or their family members items,

being able to sit in front of their homes, being able to stand outside in front of their

homes, to visit their family members or to visit their friends, or to engage in just about

any activity outside of their homes without having MPD Officers interfere with or deny

young, black males the same privileges other citizens are not denied or interfered with,

i.      falsely arresting young, black males for no other purpose than to harass the

individuals and later believing that no papering cases will diminish their liability or

make the individuals that were falsely arrested disinterested in seeking a remedy for

the violation of their rights,

j.      falsely arresting young, black males for no other purpose than to harass the

individuals and then knowing they do not have any legal basis to do so later conspiring

with other MPD Officers and/or individuals to file false reports and/or information

sheets, and even go as far as committing perjury in court by testifying falsely by

making false statements made to have the person falsely convicted because the person

did not do the conduct the MPD Officers allege to have occurred,

k.      falsely arresting, using excessive force against, and denying young, black males

the rights and privileges not denied to citizens of other races and ethic backgrounds

based on constitutionally protected speech consisting of criticizing MPD Officers

illegal behavior alone and the persons are not engaging in any other illegal conduct,

and

l.      labeling communities as hot spots and targeting young, black males who are

outside of their homes and commanding them to leave the area or go inside their homes

solely for the purpose of making citizens who feel uncomfortable seeing young, males

outside feel more comfortable and also to make the neighborhoods look like it does not

consist of young, black males; although the young black males live in the

neighborhoods or are visiting family and friends that live in the neighborhoods.

Because the young, black males are not engaged in any criminal activity the commands to leave the neighborhoods or go home have no legal or legitimate law enforcement purpose.

46.    As a result of the Defendants' intentional, reckless, and malicious disregard for the Plaintiff's rights Mr. Hall suffered and continuous to suffer from discomfort, inconvenience, annoyance, pain and suffering, humiliation, embarrassment, nervousness, injury to his reputation, fright, mental distress, mental suffering, and mental anguish.

47.    As a result of the injuries, Mr. Hall suffered on November 15, 2006, by the use of force by the MPD Officers Mr. Hall also suffers from reoccurring headaches, twitches consisting of involuntarily head jerks, dizziness and frequent blurred vision. Mr. Hall also complains of feeling early signs of depression such as a sense of helplessness and hopelessness, depressed mood, loss of interest in the activities of daily living, unusual irritability and a diminished ability to think or concentrate.

48.    At all times, Defendant MPD Officers:

   a.   wore the uniform of the District of Columbia MPD;

   b.   used the resources and property of the MPD;

   c.   were on active duty as Officers of the MPD;

   d.   acted under their authority as Officers of the MPD; and

   e.   acted under color of law, statutes, ordinance, regulation, custom and usage of the District of Columbia.

49.    The MPD Officers knew and intended or should have known that their acts would violate Mr. Hall's clearly established constitutional rights.

50.    Mr. Hall, is therefore entitled to money damages pursuant to 42 U.S.C. § 1983 to compensate him for his injuries and for the violations of his rights under the U.S. constitution as well as the laws and statutes of the District of Columbia, civil and common law.

51.    Mr. Hall is further entitled to punitive damages from the MPD Officers to punish the MPD Officers for their knowing and intentional misconduct in violation of his constitutional rights.

## V.    SECOND CAUSE OF ACTION

### CIVIL RIGHTS CLAIMS UNDER 42 U.S.C. § 1985(3)

52.    Plaintiff hereby realleges and incorporates by reference herein paragraphs 1- 51 of this complaint.

53.    On November 15, 2006, Ofc. Wytch, Ofc. Freeman and an unknown Officer of the MPD, violated 42 U.S.C. § 1985(3) when the MPD Officers conspired to deny Mr. Hall, an unreasonable seized Mr. Hall's wallet and photo-identification card, equal protection of the laws, and of equal privileges and immunities under the laws based on his race by falsely arresting and unreasonably detaining, searching and seizing Mr. Hall based on his lawful protected speech without engaging in illegal conduct in violation of the Plaintiff's First, Fourth, and Fifth Amendment Rights when the three MPD Officers arrested and unreasonably detained Mr. Hall without probable cause or any other legally sufficient basis to do so.

54.    On November 15, 2006, Ofc. Wytch, Ofc. Freeman and on unknown Officer of the MPD, violated 42 U.S.C. § 1985(3) when the MPD Officers conspired to deny Mr. Hall equal protection of the laws, and of equal privileges and immunities under the laws based on his race

by falsely arresting and unreasonably detaining, searching and seizing Mr. Hall, an

unreasonable seized Mr. Hall's wallet and photo-identification card, based on his lawful

protected speech without engaging in illegal conduct in violation of the Plaintiff's First,

Fourth, and Fifth Amendments when the three MPD Officers arrested and unreasonably

detained Mr. Hall without probable cause or any other legally sufficient basis to do so.

55.    On November 15, 2006, Ofc. Wytch, Ofc. Freeman and one unknown MPD Officer

stated that Mr. Hall had an "attitude problem" after Mr. Hall expressed his concerns of being

harassed and criticized MPD Officers' continuous violations of his rights under the U.S.

constitution as well as the laws and statutes of the District of Columbia, civil and common law.

56.    The three MPD Officers disagreed with Mr. Hall speech and immediately brutalized

Mr. Hall, threaten, intimidated him, and prevented him from criticizing MPD Officers further.

After the three MPD Officers decided not to falsely arrest Mr. Hall, the three MPD Officers

surrounded Mr. Hall to intimidate Mr. Hall in not taking any legal action in seeking any

remedies against them.

57.    Ofc. Freeman threaten that Mr. Hall could have been beaten like a Mexican man was

beaten in a highly publicized case involving alleged police misconduct in Los Angeles,

California.  When Mr. Hall heard this statement he believed it to be a threat and felt that the

MPD Officer was intended to use this statement to intimidate him and further prevent him

from seeking legal action against the three MPD Officers and to also prevent him from

speaking.  Mr. Hall felt that if he did speak that one or more of the MPD Officers would, along

with Ofc. Freeman, inflict the same bodily harm inflicted upon the unknown Mexican man.

58.    Mr. Hall remained handcuffed for at least ten to fifteen minutes after the MPD Officers

apparently realized they made a terrible mistake and decided to talk to Mr. Hall about their

family life, how to become a police officer and other issues not related to what occurred on that night. Mr. Hall who was still handcuffed, dazed from having his head slammed on the concrete alley ground pavement on the ground, and still trying to catch his breath to have a normal breathing pattern; did not want to discuss anything with the MPD Officers, did not consent to be further unreasonably detained, especially in handcuffs and wanted to leave the vicinity of where the MPD Officers were further detaining him.

59.    The District of Columbia, the MPD, Chief Cathy Lanier and Chief Ramsey have and had a policy, practice and custom and are aware (specifically by conducting their own investigations through Internal Affairs and also by investigation conducted by the Office of Police Complaints which results of the investigations are sent to the Chief of Police, Chief Cathy Lanier and the former Chief Charles Ramsey were also sent copies of these reports) that MPD Officers have a policy, practice and custom of committing conspiracies motivated by a racial or class-based discriminatory basis and the MPD have and had a policy, practice and custom of giving assistance to MPD Officers who are alleged to have violated the rights of individuals, including the Plaintiff and a deliberate indifference to MPD Officers' misconduct to protect themselves, from individuals wishing to redress violations of their rights.

60.    As a result of the Defendants' intentional, reckless, and malicious disregard for the Plaintiff's rights Mr. Hall suffered and continuous to suffer from discomfort, inconvenience, annoyance, pain and suffering, humiliation, embarrassment, nervousness, injury to his reputation, fright, mental distress, mental suffering, mental anguish.

61.    As a result of the injuries, Mr. Hall suffered on November 15, 2006, by the use of force by the MPD Officers Mr. Hall also suffers from reoccurring headaches, twitches consisting of involuntarily head jerks, dizziness and frequent blurred vision. Mr. Hall also complains of feeling early signs of depression such as a sense of helplessness and hopelessness, depressed mood, loss of interest in the activities of daily living, unusual irritability and a diminished ability to think or concentrate.

62.    At all times, Defendant MPD Officers:

    a.  wore the uniform of the District of Columbia MPD;

    b.  used the resources and property of the MPD;

    c.  were on active duty as Officers of the MPD;

    d.  acted under their authority as Officers of the MPD; and

    e.  acted under color of law, statutes, ordinance, regulation, custom and usage of the District of Columbia.

63.    MPD Officers knew and intended or should have known that their acts would violate Mr. Hall's clearly established rights under the U.S. constitution as well as the laws and statutes of the District of Columbia, civil and common law.

64.    Mr. Hall, is therefore entitled to money damages pursuant to 42 U.S.C. § 1983 to compensate him for his injuries and for the violations of his constitutional and civil rights.

65.    Mr. Hall is further entitled to punitive damages from the MPD Officers to punish the MPD Officers for their knowing and intentional misconduct in violation of his constitutional rights.

## VI.    THIRD CAUSE OF ACTION

## CIVIL RIGHTS CLAIMS UNDER 42 U.S.C. § 1983

### Violations of Right To Liberty under Due Process Of

### Law in Violation of the Fifth Amendment

66.    Plaintiff hereby realleges and incorporates by reference herein paragraphs 1- 65 of this complaint.

67.    MPD Officers deprived Mr. Hall of his right to liberty without providing Mr. Hall with due process of law, in violation of the Fifth Amendment.

68.    On several occasions from June of 2004 to March of 2007 which are previously enumerated in Section One Civil Rights Claims under 42 U.S.C. § 1983 Paragraph 44 subsections a-m, several Officers of the MPD, illegally detained, searched and seized Mr. Hall and seized his photo-identification card.  Mr. Hall was not detained based on any justifiable legal reason and the detainments were unreasonable.

69.    The failure to properly train and supervise MPD Officers in ensuring that persons rights to their liberty are not denied without due process of law is unconstitutional and contrary to others rights and Mr. Hall's rights under the U.S. Constitution, laws and statutes of the District of Columbia, and civil and common law because the District of Columbia and the MPD fails to train its employees and supervise its employees, and the failure to train and supervise its employees amounts to a deliberate indifference to an obvious need for such training, and supervision and the failure to train and supervise MPD Officers resulted in the MPD Officers denying Mr. Hall the right to his liberty without providing Mr. Hall with due process of law.

70.    In addition to the having a policy, custom and practice, and failing to train and supervise MPD Officers, the District of Columbia, the MPD, Chief Cathy Lanier and the former Chief Charles Ramsey, that resulted in denying Mr. Hall the right to liberty without

providing Mr. Hall with due process of law by the MPD Officers, the Defendants engaged in conduct that was "arbitrary, or conscience shocking, in a constitutional sense" by having a deliberate indifference to the policies, practices and customs of the MPD Officers which ultimately resulted in the violations of the Plaintiff's rights.

71.     At all times, Defendant MPD Officers:

    a.  wore the uniform of the District of Columbia MPD;

    b.  used the resources and property of the MPD;

    c.  were on active duty as Officers of the MPD;

    d.  acted under their authority as Officers of the MPD; and

    e.  acted under color of law, statutes, ordinance, regulation, custom and usage of the District of Columbia.

72.     MPD Officers knew and intended or should have known that their acts would violate Mr. Hall's clearly established rights under the U.S. constitution as well as the laws and statutes of the District of Columbia, civil and common law.

73.     Mr. Hall, is therefore entitled to money damages pursuant to 42 U.S.C. § 1983 to compensate him for his injuries and for the violations of his constitutional and civil rights.

74.     Mr. Hall is further entitled to punitive damages from the MPD Officers to punish the MPD Officers for their knowing and intentional misconduct in violation of his constitutional rights.

**VII.     FOURTH CAUSE OF ACTION**

**CIVIL RIGHTS CLAIMS UNDER 42 U.S.C. § 1983**

**<u>Violations of Right To Property Under Due Process</u>**

**<u>of Law in Violation of the Fifth Amendment</u>**

75.    Plaintiff realleges and incorporates by reference herein paragraphs 1- 74 of this complaint.

76.    MPD Officers deprived Mr. Hall of his right to property without providing Mr. Hall with due process of law, in violation of the Fifth Amendment when:

       a.    On November 15, 2006, Ofc. Wytch, Ofc. Freeman, and one unknown MPD Officer took Mr. Hall's photo-identification card and never returned it.

       b.    On November 15, 2006 Ofc. Wytch, Ofc. Freeman, and one unknown MPD Officer damaged Mr. Hall's watch which costs more than $200.00. The damaged was due to the force of the three MPD Officer's upon the Plaintiff.

77.    The failure to properly train and supervise MPD Officers in ensuring that persons right to their property are not denied without due process of law is unconstitutional and contrary to others rights and Mr. Hall's rights under the U.S. Constitution, laws and statutes of the District of Columbia, and civil and common law because the District of Columbia and the MPD fails to train its employees and supervise its employees, and the failure to train and supervise its employees amounts to a deliberate indifference to an obvious need for such training, and supervision and the failure to train and supervise MPD Officers resulted in the MPD Officers denying Mr. Hall the right to his property without providing Mr. Hall with due process of law.

78.    In addition to the having a policy, custom and practice, and failing to train and supervise MPD Officers the District of Columbia, the MPD, Chief Cathy Lanier and the former Chief Charles Ramsey, that resulted in denying Mr. Hall right to property without providing Mr. Hall with due process of law by the MPD Officers, the Defendants engaged in conduct that was "arbitrary, or conscience shocking, in a constitutional sense" by having a

deliberate indifference to the policies, practices and customs of the MPD Officers which ultimately resulted in the violations of the Plaintiff's rights.

79.    As a result of the plaintiff being denied the right to property without providing Mr. Hall with due process of law Mr. Hall had to replace his photo-identification card in the amount of $20.00 and watch which costs over $200.00.

At all times, Defendant MPD Officers:

a.  wore the uniform of the District of Columbia MPD;

b.  used the resources and property of the MPD;

c.  were on active duty as Officers of the MPD;

d.  acted under their authority as Officers of the MPD; and

e.  acted under color of law, statutes, ordinance, regulation, custom and usage of the District of Columbia.

80.    MPD Officers knew and intended or should have known that their acts would violate Mr. Hall's clearly established his rights under the U.S. constitution as well as the laws and statutes of the District of Columbia, civil and common law.

81.    Mr. Hall, is therefore entitled to money damages pursuant to 42 U.S.C. § 1983 to compensate him for his injuries and for the violations of his constitutional and civil rights.

82.    Mr. Hall is further entitled to punitive damages from the MPD Officers to punish the MPD Officers for their knowing and intentional misconduct in violation of his constitutional rights.

## VIII.   FIFTH CAUSE OF ACTION

## CIVIL RIGHTS CLAIMS UNDER 42 U.S.C. § 1983

## Denial of Medical Care in Violation of the Fifth Amendment

83.    Plaintiff hereby realleges and incorporates by reference herein paragraphs 1- 82 of this complaint.

84.    On November 15, 2006, Mr. Hall was deprived of due process under the law by Ofc. Wytch, Ofc. Freeman and an unknown MPD Officer when Mr. Hall was denied the right to medical care when the three MPD officer injured the Plaintiff while he was in their custody before and after he was arrested.

85.    On November 15, 2006, Mr. Hall was denied medial care when Ofc. Wytch, Ofc. Freeman and an unknown MPD Officer caused blunt force trauma to the head of Mr. Hall rendering him unconscious and clearly visible injuries to his bleeding forehead and he was not immediately transported to the hospital by the three MPD Officers that were holding him handcuffed in custody.

86.    Once one of the MPD Officers knocked Mr. Hall unconscious they had an immediate duty to immediately call an ambulance and properly seek medical treatment for Mr. Hall. But instead of seeking treating for Mr. Hall the MPD Officers decided to illegally search and further assault the unconscious Mr. Hall.

87.    On November 15, 2006, Mr. Hall was denied medial care when the three MPD Officers discovered that the blow to Mr. Hall's forehead rendered Mr. Hall unconscious and caused clearly visible injuries to Mr. Hall's bleeding forehead but failed to tell Mr. Hall that he was unconscious for a period of time or that he had clearly visible injuries.

88.    Mr. Hall did not recall until at least a day later that he was unconscious because it was later that he realized that there was a gap of time in his memory and he remembered that when he regained consciousness that one or more of the MPD Officers were going through his pockets and asking his questions.

89.    Further, Mr. Hall could not see his injuries because he was handcuffed and did not have

a mirror and could not immediately feel pain because he was still regaining full consciousness

as a result of the blow to his head.  He was also distracted because he feared for his life and did

not know what the three MPD Officers would do next.

90.    The failure to properly train and supervise MPD Officers in ensuring that persons that

are injured while in the custody of the MPD promptly receive immediate medical treatment or

prompt calls for emergency medical treatment is unconstitutional and contrary to others rights

and Mr. Hall's rights under the U.S. Constitution, laws and statutes of the District of

Columbia, and civil and common law because the District of Columbia and the MPD fails to

train its employees and supervise its employees, and the failure to train and supervise its

employees amounts to a deliberate indifference to an obvious need for such training, and

supervision and the failure to train and supervise MPD Officers resulted in the MPD Officers

denying Mr. Hall the right to medical treatment.

91.    In addition to the having a policy, custom and practice, and failing to train and

supervise MPD Officers, the District of Columbia, the MPD, Chief Cathy Lanier and the

former Chief Charles Ramsey, that resulted in denying Mr. Hall medical care by the MPD

Officers, the Defendants engaged in conduct that was "arbitrary, or conscience shocking, in a

constitutional sense" by having a deliberate indifference to the policies, practices, and customs

of the MPD Officers which ultimately resulted in the violations of the Plaintiff's rights.

92.    As a result of the Defendants' intentional, reckless, and malicious disregard

for the Plaintiff's rights the Plaintiff suffered and continuous to suffer from

discomfort, inconvenience, annoyance, pain and suffering, humiliation,

embarrassment, nervousness, injury to his reputation, fright, mental distress, mental suffering, and mental anguish.

93.    As a result of the injuries, Mr. Hall suffered on November 15, 2006, by the use of force by the MPD Officers Mr. Hall also suffers from reoccurring headaches, twitches consisting of involuntarily head jerks, dizziness and frequent blurred vision.  Mr. Hall also complains of feeling early signs of depression such as a sense of helplessness and hopelessness, depressed mood, loss of interest in the activities of daily living, unusual irritability and a diminished ability to think or concentrate.

94.    At all times, Defendant MPD Officers:

   a.   wore the uniform of the District of Columbia MPD;

   b.   used the resources and property of the MPD;

   c.   were on active duty as Officers of the MPD;

   d.   acted under their authority as Officers of the MPD; and

   e.   acted under color of law, statutes, ordinance, regulation, custom and usage of the District of Columbia.

95.    MPD Officers knew and intended or should have known that their acts would violate Mr. Hall's clearly established constitutional rights.

96.    Mr. Hall, is therefore entitled to money damages pursuant to 42 U.S.C. § 1983 to compensate him for his injuries and for the violations of his constitutional and civil rights.

97.    Mr. Hall is further entitled to punitive damages from the MPD Officers to punish the MPD Officers for their knowing and intentional misconduct in violation of his constitutional rights.

## IX.  SIXTH CAUSE OF ACTION

### CIVIL RIGHTS CLAIMS UNDER 42 U.S.C. § 1983

### Violation of the Prohibition against Punishment without Due

### Process of the Law in Violation of the Fifth Amendment

98.    Plaintiff hereby realleges and incorporates by reference herein paragraphs 1- 97 of this complaint.

99.    On November 15, 2006, Ofc. Wytch, Ofc. Freeman and an unknown MPD Officer punished Mr. Hall by using excessive against him prior to an adjudication of guilt in accordance with due process of law.

100.    At the time of the punishment, Mr. Hall was in the custody of and being arrested by Ofc. Wytch, Ofc. Freeman and the unknown MPD Officer.

101.    The three MPD Officers use of excessive force while arresting Mr. Hall violated the Plaintiff's right to be free from punishment and cruel and unusual punishment without due process of the law because the MPD Officers physically abused Mr. Hall by using unnecessary, unreasonable and excessive force upon him.

102.    Ofc. Wytch, Ofc. Freeman and the unknown MPD pushed Mr. Hall into an corner, grabbed Mr. Hall's arms, threw him on the ground, cut off his air passage way preventing him from being able to breathe, and slammed his head on a concrete alley pavement on the ground knocking him unconscious, pulled Mr. Hall off the ground by his back pockets and then dropped his body back onto the ground, forcibly placed a baseball cap over his swollen forehead and then pushed Mr. Hall against a fence.

103.     The unreasonableness of the detainment, search, seizure and arrest of Mr.

Hall is contrary to law and MPD Officers, did not have a lawful basis under clearly

established law when they unreasonably detained, searched, seized and arrested Mr.

Hall for no legal basis and subjected Mr. Hall to cruel and unusual punishment.

104.     The three MPD Officers knew and intended or should have known that their acts would

violate Mr. Hall's U.S. constitutional rights, and the laws and statutes of the District of

Columbia and common law which were clearly established laws, statutory or constitutional

rights of which a reasonable person would have known that the conduct would violate Mr.

Hall's constitutionally protected rights secured under the First Amendment and Fifth

Amendment, other U.S. Constitutional Amendments, laws and statutes of the District of

Columbia and common law.

105.     In addition to the having a policy, custom and practice, the District of Columbia, the

MPD, Chief Cathy Lanier and the former Chief Charles Ramsey, that resulted in the violations

of the Mr. Hall's First Amendment and Fifth Amendment rights the Defendants have a

deliberate indifference to MPD Officers continuous violations of persons, including Mr. Hall's

First Amendment and Fifth Amendment rights and are engaged in conduct that was "arbitrary,

or conscience shocking, in a constitutional sense" by having a deliberate indifference to the

violations of Mr. Hall's rights by the MPD Officers.

106.     As a result of the Defendants' intentional, reckless, and malicious disregard

for the Plaintiff's rights Mr. Hall suffered and continuous to suffer from discomfort,

inconvenience, annoyance, pain and suffering, humiliation, embarrassment,

nervousness, injury to his reputation, fright, mental distress, mental suffering, and

mental anguish.

107. As a result of the injuries, Mr. Hall suffered on November 15, 2006, by the use of force by the MPD Officers Mr. Hall also suffers from reoccurring headaches, twitches consisting of involuntarily head jerks, dizziness and frequent blurred vision. Mr. Hall also complains of feeling early signs of depression such as a sense of helplessness and hopelessness, depressed mood, loss of interest in the activities of daily living, unusual irritability and a diminished ability to think or concentrate.

108. At all times, Defendant MPD Officers:

    a. wore the uniform of the District of Columbia MPD;

    f. used the resources and property of the MPD;

    g. were on active duty as Officers of the MPD;

    h. acted under their authority as Officers of the MPD; and

    i. acted under color of law, statutes, ordinance, regulation, custom and usage of the District of Columbia.

109. Mr. Hall, is therefore entitled to money damages pursuant to 42 U.S.C. § 1983 to compensate him for his injuries and for the violations of his constitutional and civil rights.

110. Mr. Hall is further entitled to punitive damages from the MPD Officers to punish the MPD Officers for their knowing and intentional misconduct in violation of his constitutional rights.

## X.    SEVENTH CAUSE OF ACTION

## CIVIL RIGHTS CLAIMS UNDER 42 U.S.C. § 1983

## FIRST AMENDMENT VIOLATIONS

111. Plaintiff hereby realleges and incorporates by reference herein paragraphs 1 –110 of this complaint.

112.    On various dates from June of 2004 to March 2007, members of the MPD Officers,

former Chief Charles Ramsey, the District of Columbia and the MPD violated the Plaintiff's

First Amendment Right to free speech when he was told by several MPD Officers that if he did

not refrain from talking he would be arrested for no legal reason and when he was compelled

to speak. On various dates from 2002-2006, MPD Officers repeatedly illegally detained,

searched and seized Mr. Hall and seized Mr. Hall's photo-identification card; while also

conditioning Mr. Hall's freedom from an illegal arrest upon him discontinuing his right to free

speech and on some occasions compelling him to answer.

113.    When Mr. Hall questioned about the purpose of the detainments, searches or seizures

or complained about the being stopped by MPD Officers between June of 2004 to March of

2007, Mr. Hall was advised that if he continued to speak he would be arrested although there

was no probable cause or any other legal basis to do so.

114.    When Mr. Hall was told to not speak or he would face being falsely arrested Mr. Hall

speech was "chilled" and he decided to not speak any further. The threat of being falsely

arrested caused Mr. Hall to be prevented from voicing any further complaints about being

illegally searched and seized. Mr. Hall was scared and feared to say anything further even

though he wanted to speak further.

115.    On or about November 16, 2004, Mr. Hall's friend called an unknown MPD Officer

working on vice squad, "GI Joe." The unknown MPD Officer forcibly grabbed Mr. Hall's

right arm and pulled him into an alley, behind a store, in the dark while no other person was

apparently visible. The MPD Officer had no lawfully basis to detain Mr. Hall and Mr. Hall's

right to free speech was denied because Mr. Hall was scared and feared making any

statements. Mr. Hall knew that the MPD Officer's assault, battery, illegal detainment and

seizure, and threat upon him was based on the statement his friend made because before

grabbing Mr. Hall the MPD Officer questioned who made the statement. No one answered so

the MPD Officer took action against Mr. Hall.

116.    On or about June of 2005, Mr. Hall was visiting a friend in River Terrace, a

neighborhood located in N.E when Mr. Hall and several of his friends were detained by several

MPD Officers. As one of Mr. Hall's friends began to sit down on the curb he realized there

was some glass on the curb and attempted to move over to avoid sitting on the glass. MPD

Officer Lynch tried to push the person on the glass.

117.    Mr. Hall stated that was not right to push the friend attempting to cause him to fall onto

the glass. MPD Officer Lynch, knocked the hat of Mr. Hall's head. Mr. Hall was next

commanded to open his legs. Mr. Hall was complying with the command but before he got the

chance to completely open his legs MPD Officer Lynch kicked Mr. Hall's leg to open his leg.

118.    Before, Officer Lynch knocked the hat off Mr. Hall's head there was no other basis to

assault Mr. Hall other than Ofc. Lynch disagreed with his speech. Because Ofc. Lynch's

assault and battery upon Mr. Hall was based on his speech Mr. Hall was scared and feared to

say anything further even though he wanted to speak further.

119.    On November 15, 2006, Ofc. Wytch, Ofc.  Freeman and one unknown MPD Officer's

conduct deprived Mr. Hall of his right to peacefully express his views in a public forum, in

violation of the First Amendment when the three Officers, assaulted, battered, falsely arrested,

illegally detained, searched and seized Mr. Hall and seized Mr. Hall's wallet and photo-

identification because they disagreed with his constitutionally protected speech which did not

consist of any illegal conduct.

120. On November 15, 2006, Ofc. Wytch, Ofc. Freeman and one unknown MPD Officer of the MPD, approached Mr. Hall and asked the Plaintiff why did he have an "attitude problem. Mr. Hall expressed his concerns of being harassed and criticized Officers of the MPD continuous violations of his U.S. constitutional rights as well as the law and statutes of the District of Columbia, civil and common law. The MPD Officers disagreed with Mr. Hall's speech and immediately brutalized Mr. Hall, threaten and intimidated the Plaintiff preventing him from criticizing the MPD and its Officers further.

121. The deprivation also occurred because by being assaulted, battered, falsely arrested, illegally detained, searched and seized by Ofc. Wytch, Ofc. Freeman and one unknown MPD Officer, Mr. Hall was prevented from speaking while being battered and assaulted.

122. Further, while Mr. Hall was unconscious he was unable to further speak. Also, when threaten by Ofc. Freeman's statement that Mr. Hall could have been beaten Mr. Hall was terrified that further engaging in constitutionally protected speech which would not have consisted of any illegal conduct would have resulted in serious harm to himself, his death or a false arrest.

123. On or about October of 2006, an unknown MPD Officer detained Mr. Hall by preventing him from being able to exit the apartment building he lived in and walk outside of the building by continuously asking Mr. Hall, to ask Mr. Hall questions and commanding Mr. Hall to answer the questions.

124. Mr. Hall was unresponsive but after the persistent, hostile demands Mr. Hall made some statements against his will. The unknown MPD Officers eventually left. Mr. Hall did not consent to the unreasonable detainment or the violation of his First Amendment Right to not be compelled to speak.

125.    On or about March 1, 2007, an unknown MPD Officer asked Mr. Hall where he was going and where he lived. Mr. Hall responded that he lived down the street and was going to the store. The MPD Officers then asked Mr. Hall, "What are you getting from the store." One of the three MPD Officers seized Mr. Hall's photo-identification card and wrote information in a book. Mr. Hall was then given his photo-identification card back and then was allowed to continue to walk to the store.

126.    On or about March 1, 2007, Mr. Hall did not want to stop and present his photo-identification card to the MPD Officers. Mr. Hall did not consent to being unreasonably detained and did not voluntarily consent to display his photo-identification card. Mr. Hall was also compelled to speak against his will because when the MPD Officers stopped Mr. Hall, Mr. Hall was scared and frighten because he was not engaged in any criminal activity and did not know what the MPD Officers were attempting to do. Mr. Hall did not want to tell the MPD officers where he was going or what he was buying from the store.

127.    The District of Columbia, Chief Cathy Lanier, and the former Chief Charles Ramsey, have and had a policy, practice and custom and a deliberate indifference of violating individuals right to free speech by not properly training, supervising, and actually directing and/or assisting MPD Officers to violate individuals First Amendment rights by committing battery, assaults, false arrests, and unreasonably detaining individuals for no other reason than they disagreed with their constitutionally protected speech.

128.    This practice, custom and policy and deliberate indifference is widely known and the Defendants, District of Columbia, the MPD and its Officers history, of violating the First Amendment rights of demonstrators and black and African-Americans who criticize anything or the District of Columbia, the MPD and its Officers are clearly known.

129.    In addition to the policy, custom and practice, and deliberate indifference to the rights

of others, the District of Columbia, the MPD and Chief Cathy Lanier and the former Chief

Charles Ramsey engaged in conduct that was "arbitrary, or conscience shocking, in a

constitutional sense" by having a deliberate indifference to the policies, practices, and customs

of the MPD Officers which ultimately resulted in the violations of the Plaintiff's rights.

130.    At all times, Defendant MPD Officers:

        a. wore the uniform of the District of Columbia MPD;

        b. used the resources and property of the MPD;

        c. were on active duty as Officers of the MPD;

        d. acted under their authority as Officers of the MPD; and

        e. acted under color of law, statutes, ordinance, regulation, custom and usage of

        the District of Columbia.

131.    MPD Officers knew and intended or should have known that their acts would violate

Mr. Hall's clearly established First Amendment constitutionally protected right to free speech,

the law and statutes of the District of Columbia and the common law.

132.    As a result of the Defendants' intentional, reckless, and malicious disregard

for the Plaintiff's rights Mr. Hall suffered and continuous to suffer from discomfort,

inconvenience, annoyance, pain and suffering, humiliation, embarrassment,

nervousness, injury to his reputation, fright, mental distress, mental suffering, and

mental anguish.

133.    As a result of the injuries, Mr. Hall suffered on November 15, 2006, by the

use of force by the MPD Officers Mr. Hall also suffers from reoccurring headaches,

twitches consisting of involuntarily head jerks, dizziness and frequent blurred vision. Mr. Hall also complains of feeling early signs of depression such as a sense of helplessness and hopelessness, depressed mood, loss of interest in the activities of daily living, unusual irritability and a diminished ability to think or concentrate.

134. Mr. Hall, is therefore entitled to money damages pursuant to 42 U.S.C. § 1983 to compensate him for his injuries and for the violations of his constitutional and civil rights.

135. Mr. Hall is further entitled to punitive damages from the MPD Officers to punish the MPD Officers for their knowing and intentional misconduct in violation of his constitutional rights.

## XI.    EIGHTH CAUSE OF ACTION

### CIVIL RIGHTS CLAIMS UNDER 42 U.S.C. § 1983

### FOURTH AMENDMENT VIOLATIONS

136. Plaintiff hereby realleges and incorporates by reference herein paragraphs 1 –135 of this complaint.

137. On Several occasions from June of 2004 to March of 2007, which are previously enumerated in Section One Civil Rights Claims under 42 U.S.C. § 1983 Paragraph 44 subsections a-m, several Officers of the Metropolitan Police Department without Mr. Hall's consent unreasonably detained, searched and seized Mr. Hall and seized his wallet and photo-identification card and falsely arrested Mr. Hall on November 15, 2006, without probable cause or any other justifiable legal reason.

138. At all times, Defendant MPD Officers:

   a. wore the uniform of the District of Columbia MPD;

   b. used the resources and property of the MPD;

   c.  were on active duty as Officers of the MPD;

   d.  acted under their authority as Officers of the MPD; and

   e.  acted under color of law, statutes, ordinance, regulation, custom and usage of the
      District of Columbia.

139.   MPD Officers knew and intended or should have known that their acts would violate

Mr. Hall's U.S. constitutional rights, law and statutes of the District of Columbia, civil and

common law.

140.   The District of Columbia, Chief Cathy Lanier, and the former Chief Charles Ramsey,

have and had a policy, practice and custom and a deliberate indifference of violating

individuals, including Mr. Hall's Fourth Amendment rights, by failing to supervisor, and

actually directing and/or assisting MPD Officers to violate individuals Fourth Amendments

rights by, false arrests, illegal searches and seizures and using excessive force to detain, search,

seize or arrest individuals.

141.   In addition to the having a policy, custom and practice, the District of Columbia, the

MPD and Chief Cathy Lanier and the former Chief Charles Ramsey that resulted in the

violations of the Mr. Hall's Fourth Amendment rights the Defendants engaged in conduct that

was "arbitrary, or conscience shocking, in a constitutional sense" by having a deliberate

indifference to the policies, practices, and customs of the MPD Officers which ultimately

resulted in the violations of the Plaintiff's rights.

142.   As a result of the Defendants' intentional, reckless, and malicious disregard

for the Plaintiff's rights Mr. Hall suffered and continuous to suffer from discomfort,

inconvenience, annoyance, pain and suffering, humiliation, embarrassment,

nervousness, injury to his reputation, fright mental distress, mental suffering, and mental anguish.

143.    As a result of the injuries, Mr. Hall suffered on November 15, 2006, by the use of force by the MPD Officers Mr. Hall also suffers from reoccurring headaches, twitches consisting of involuntarily head jerks, dizziness and frequent blurred vision.  Mr. Hall also complains of feeling early signs of depression such as a sense of helplessness and hopelessness, depressed mood, loss of interest in the activities of daily living, unusual irritability and a diminished ability to think or concentrate.

144.    Mr. Hall, is therefore entitled to money damages pursuant to 42 U.S.C. § 1983 to compensate him for his injuries and for the violations of his constitutional and civil rights.

145.    Mr. Hall is further entitled to punitive damages from the MPD Officers to punish the MPD Officers for their knowing and intentional misconduct in violation of his constitutional rights.

## XII.    NINTH CAUSE OF ACTION

### CIVIL RIGHTS CLAIMS UNDER 42 U.S.C. § 1983

#### Retaliation For Exerting Lawful And Constitutional Rights in

#### Violation of the Fifth Amendment

146.    Plaintiff hereby realleges and incorporates by reference herein paragraphs 1 –145 of this complaint.

147.    On November 15, 2006, Ofc. Wytch, Ofc. Freeman and one unknown MPD Officer willfully, intentionally and recklessly engaged in retaliatory action against Mr. Hall for exercising lawful and constitutional rights to free speech because Mr.

Hall voiced his complaints about being harassed by several MPD Officers and because he asked the three MPD Officers not to harass him and questioned the three MPD officers illegal conduct.

148.    The three MPD Officers retaliation consisted of falsely arresting, assaulting, battering, illegally detaining, illegally searching and illegal seizing Mr. Hall and illegally seizing his wallet and photo-identification card without probable cause or any other legal basis and violating Mr. Hall's Fifth Amendment right to not be denied liberty, property or punishment without due process of law.

149.    Mr. Hall's Fourth Amendment right to be free from an unreasonable search and seizure by illegal searching, seizing him and his wallet and photo-identification card and using excessive force against Mr. Hall and Mr. Hall's Fifth Amendment right to not be denied liberty, property and punishment without due process of law were clearly established by laws on November 15, 2006 and thus the three MPD Officers knew that it was contrary to clearly established law to retaliate against Mr. Hall for the exercise of his constitutionally protected rights. The acts in retaliation of the exercise of Mr. Hall's lawful and constitutional rights were retaliation because the actions taken by the MPD were taken for an improper reasons.

150.    At all times, Defendant MPD Officers:

    a.    wore the uniform of the District of Columbia MPD;

    b.    used the resources and property of the MPD;

    c.    were on active duty as Officers of the MPD;

    d.    acted under their authority as Officers of the MPD; and

e. acted under color of law, statutes, ordinance, regulation, custom and usage of the
   District of Columbia.

151.    The District of Columbia, Chief Cathy Lanier, and the former Chief Charles Ramsey,
have and had a policy, practice and custom and a deliberate indifference of violating
individuals rights, including Mr. Hall's, to free speech by not properly training, supervising,
and actually directing and/or assisting MPD Officers to violate individuals First Amendment
and Fifth Amendment Amendments rights by retaliating against individuals for exercising their
First Amendment rights by committing battery, assaults, false arrests, and unnecessarily
detaining individuals for no other reason than they disagreed with their constitutionally
protected speech.

152.    This practice, custom and policy and deliberate indifference is widely known and the
Defendants, District of Columbia, the MPD and its Officers history, of violating the Fifth and
First Amendments rights of demonstrators and black and African-Americans who criticize
anything or the District of Columbia, the MPD, and its Officers is clearly known.

153.    In addition to the policy, custom and practice, and deliberate indifference to the rights
of others, the District of Columbia, the MPD and Chief Cathy Lanier and the former Chief
Charles Ramsey engaged in conduct that was "arbitrary, or conscience shocking, in a
constitutional sense" by having a deliberate indifference to the policies, practices, and customs
of the MPD Officers which ultimately resulted in the violations of the Plaintiff's rights.

154,    Mr. Hall is therefore entitled to money damages pursuant to 42 U.S.C. § 1983 to
compensate him for his injuries and for the violations of his constitutional and civil rights. Mr.
Hall is further entitled to punitive damages from the MPD Officers to punish the MPD Officers
for their knowing and intentional misconduct in violation of his constitutional rights.

## XIII.  NINTH CAUSE OF ACTION

### ASSAULT

155.    Plaintiff hereby realleges and incorporates by reference herein paragraphs 1- 154 of this complaint.

156.    On or about September 14, 2006, Mr. Hall was talking to a friend who lived on 300 block of Todd Place N.E., a MPD Officer approached Mr. Hall and asked him what was he laughing at.  The MPD Officer grabbed Mr. Hall's arm.  The MPD Officer told Mr. Hall that he should give him a ticket because his photo-identification card was split at the bottom.  The MPD Officer told Mr. Hall that he had an attitude problem and then threaten that he should "strip search" Mr. Hall and "send him home naked."  Mr. Hall did not consent to the attempted and unlawful threat to physical harm him or the intentional, harmful, offensive and excessive and unnecessary use of force by the MPD Officers and Mr. Hall was harmed by the threat and the contact.

157.    On November 15, 2006, the Plaintiff was assaulted by Ofc. Wytch, Ofc. Freeman and one unknown MPD Officer when the three MPD Officers used deadly, excessive and unnecessary force while engaged in the following conduct causing severe, harmful, offensive and intentional injuries upon Mr. Hall without his consent and some of the actions without his knowledge during the beginning of the MPD Officers conduct to give Mr. Hall the opportunity to consent:

        a.     One of the MPD Officers pulled out a gun and pointed the gun at Mr. Hall,

        b.     Two of the MPD Officers pushed Mr. Hall into a corner,

        c.     One of MPD Officers grabbed Mr. Hall's right arm,

    d.      One of the MPD Officers grabbed Mr. Hall's left arm,

    e.      One of the MPD Officers swung Mr. Hall on the ground, knocking his

              shoe off his foot causing injuries to Mr. Hall's, elbows, ankles, knees,

              shoulder, and arms,

    f.      One of the MPD Officer sat on top of my Mr. Hall's back,

    g.      Then a second MPD Officer sat on top of Mr. Hall's back,

    h.      One of the MPD Officers pressed his knees into the back of Mr. Hall

              cutting off his ability to have full access to his air passage way,

    i.      Then a second MPD Officers pressed his knees into the back of the Mr.

              Hall further cutting of his ability to have full access to his air passage

              way,

    j.      One of the MPD Officers grabbed Mr. Hall's hand holding it high in the

              air,

    k.      One of the MPD Officers extended Mr. Hall's right arm higher than his

              body could freely allow his arm to be pushed up and this caused injury

              to Mr. Hall's shoulder,

    l.      Mr. Hall's wrists were handcuffed by one or more of the MPD Officers,

    m.      One of the MPD Officers stood over Mr. Hall with a gun pointed at Mr.

              Hall,

    n.      One of the MPD Officers slammed Mr. Hall's head on a concrete alley

              pavement on the ground,

o.    One of the MPD Officers blow to Mr. Hall's head caused Mr. Hall's
      head to bounce off the concrete alley pavement and hit the ground a
      second time,

p.    The MPD officers picked up Mr. Hall by his back pants pockets and
      then dropped his body down causing Mr. Hall's body to fall on the
      concrete alley pavement,

q.    Then one or more of the three MPD Officers went through Mr. Hall's
      pocket without his consent or knowledge while he was still unconscious
      as a result of the injuries the MPD Officers inflicted upon him and Mr.
      Hall eventually regained consciousness while the one or more MPD
      Officers were going through his pockets but he never consented to the
      search,

r.    One of the MPD Officers shoved a cap down upon the swollen head of
      Mr. Hall,

s.    Ofc. Freeman pushed Mr. Hall against a gated fence,

t.    After the three MPD Officers decided not to falsely arrest Mr. Hall, the
      three MPD Officers surrounded Mr. Hall to intimidate Mr. Hall in not
      taking any action in seeking any remedies against them. Ofc. Freeman
      threaten that Mr. Hall could have been beaten like a Mexican man was
      beaten in a highly publicized case involving alleged police misconduct
      in Los Angeles, California. When Mr. Hall heard this statement he
      believed it to be a threat and felt that the MPD Officer intended to use
      this statement to intimidate him and further prevent him from speaking.

Mr. Hall felt that if he did speak one or more of the MPD Officers along

with Ofc. Freeman would inflict upon him the same bodily harm

inflicted upon the unknown Mexican man, and

u.   Mr. Hall remained handcuffed for at least ten to fifteen minutes when

the MPD Officers apparently realized they made a terrible mistake and

decided to talk to Mr. Hall about their family life, how to become a

MPD Officer and other issues not related to what occurred on that night.

Mr. Hall who was still handcuffed, dazed from having his head slammed

on the concrete alley pavement on the ground, and still trying to catch

his breath to have a normal breathing pattern; did not want to discuss

anything with the MPD Officers and wanted to leave the vicinity of

where the MPD Officers were further detaining him.

158.   On November 15, 2006, the Plaintiff, as a result of being assaulted by Ofc. Wytch, Ofc.

Freeman and one unknown MPD Officer, suffered several injuries to his head, forehead, scalp,

face, neck, back and including but not exclusive to his shoulder, arms, knees, legs, thighs, and

ankles.

159.   The Plaintiff is therefore entitled to recover money damages to compensate

him for his injuries suffered as a result of the Defendants,' Ofc. Wytch, Ofc.

Freeman and an unknown MPD Officer intentional, reckless, and malicious

disregard for the Plaintiff's rights.  Mr. Hall suffered and continuous to suffer from

discomfort, inconvenience, annoyance, pain and suffering, humiliation,

embarrassment, nervousness, injury to his reputation, fright, mental distress, mental

suffering, and mental anguish.  As a result of the injuries, Mr. Hall suffered on

November 15, 2006, by the use of force by the MPD Officers Mr. Hall also suffers

from reoccurring headaches, twitches consisting of involuntarily head jerks,

dizziness and frequent blurred vision.  Mr. Hall also complains of feeling early

signs of depression such as a sense of helplessness and hopelessness, depressed

mood, loss of interest in the activities of daily living, unusual irritability and a

diminished ability to think or concentrate.

160.    The failure to properly train and supervise MPD Officers in the use of force non-

excessive, reasonable and necessary to effect an arrest without injuring individuals and Mr.

Hall is unconstitutional and contrary to others rights under the U.S. constitution, the laws and

statutes of the District of Columbia, and civil and common law because the District of

Columbia and the MPD fails to train and supervise its employees, and the failure to train and

supervise its employees amounts to a deliberate indifference to an obvious need for such

training, and supervision and the failure to train and supervise MPD Officers resulted in the

MPD Officers assaulting Mr. Hall.

161.    In addition to the having a policy, custom and practice, and failing to train and

supervise MPD Officers the District of Columbia, the MPD and Chief Cathy Lanier and the

former Chief Charles Ramsey that resulted in the MPD Officers assaulting Mr. Hall, the

Defendants engaged in conduct that was "arbitrary, or conscience shocking, in a constitutional

sense" by having a deliberate indifference to the policies, practices, and customs of the MPD

Officers which ultimately resulted in the violations of the Plaintiff's rights.

162.    Mr. Hall, is therefore entitled to money damages to compensate him for his injuries and

for the violations of his rights.  Mr. Hall is further entitled to punitive damages from the MPD

Officers to punish the MPD Officers for their knowing and intentional misconduct in violation of his constitutional rights.

## XIV.   TENTHH CAUSE OF ACTION

### BATTERY

163.   Plaintiff hereby realleges and incorporates by reference herein paragraphs 1- 162 of this complaint.

164.   On or about September 14, 2006, Mr. Hall was talking to a friend who lived on 300 block of Todd Place N.E., a MPD Officer approached Mr. Hall and asked him what was he laughing at. The MPD Officer grabbed Mr. Hall's arm. The MPD Officer told Mr. Hall that he should give him a ticket because his photo-identification was split at the bottom. The MPD Officer told Mr. Hall that he had an attitude problem and then threaten that he should "strip search Mr. Hall and send him home naked." Mr. Hall did not consent to intentional, harmful, offensive and excessive and unnecessary use of force by the MPD Officers and Mr. Hall was harmed by the contact.

165.   On November 15, 2006, the Plaintiff was assaulted by Officers Wytch, Freeman and one unknown police Officer when the three MPD Officers used excessive and unnecessary force while engaged in the conduct, previously listed in Paragraph 157 subsection a-u, causing severe, harmful, offensive and intentionally injuries upon Mr. Hall without his consent when:

166.   On November 15, 2006 the Plaintiff as a result of being battered by Ofc. Wytch, Ofc. Freeman and one unknown MPD Officer Plaintiff suffered several injuries to his head, forehead, scalp, face, neck, back and including but not exclusive to his shoulder, arms, knees, legs, thighs, and ankles.

167.    The Plaintiff is therefore entitled to recover money damages to compensate

for his injuries as the result of the Defendants,' Ofc. Wytch, Ofc. Freeman and an

unknown MPD Officer intentional, reckless, and malicious disregard for the

Plaintiff's rights. Mr. Hall suffered and continuous to suffer from discomfort,

inconvenience, annoyance, pain and suffering, humiliation, embarrassment,

nervousness, injury to his reputation, fright, mental distress, mental suffering, and

mental anguish. As a result of the injuries, Mr. Hall suffered on November 15,

2006, by the use of force by the MPD Officers Mr. Hall also suffers from

reoccurring headaches, twitches consisting of involuntarily head jerks, dizziness

and frequent blurred vision. Mr. Hall also complains of feeling early signs of

depression such as a sense of helplessness and hopelessness, depressed mood, loss

of interest in the activities of daily living, unusual irritability and a diminished

ability to think or concentrate.

168.    The failure to properly train and supervise MPD Officers in use of force non-excessive,

reasonable and necessary to effect an arrest without injuring individuals and Mr. Hall is

unconstitutional and contrary to others rights under the laws and statutes of the U.S.

constitution, the law and statutes of the District of Columbia, and civil and common law

because the District of Columbia and the MPD fails to train and supervise its employees, and

the failure to train and supervise its employees amounts to a deliberate indifference to an

obvious need for such training, and supervision and the failure to train and supervise MPD

Officers resulted in the MPD Officers battering Mr. Hall.

169.    In addition to the having a policy, custom and practice, and failing to train and

supervise MPD Officers the District of Columbia, the MPD and Chief Cathy Lanier and the

former Chief Charles Ramsey that resulted in the MPD Officers battering Mr. Hall, the

defendants engaged in conduct that was "arbitrary, or conscience shocking, in a constitutional

sense" by having a deliberate indifference to the policies, practices, and customs of the MPD

Officers which ultimately resulted in the violations of the Plaintiff's rights.

170.    Mr. Hall, is therefore entitled to money damages to compensate him for his injuries and

for the violations of his rights. Mr. Hall is further entitled to punitive damages from the MPD

Officers to punish the MPD Officers for their knowing and intentional misconduct in violation

of his constitutional rights.

## XV.     ELEVENTH CAUSE OF ACTION

### Negligence – Police Officers

171.    Plaintiff hereby realleges and incorporates by reference herein paragraphs 1- 170 of

this complaint.

172.    Ofc. Wytch, Ofc. Freeman and other unknown Officer of the MPD, during the course

and scope of their employment by the District of Columbia, negligently caused Plaintiff to

suffer injuries to his forehead, head, scalp, face, neck, back, ankles, knees, wrists and shoulder

on November 15, 2006. The MPD Officers had a continuous duty to exercise reasonable care

in the arrest and detention of the Plaintiff to ensure that he was not subjected to injuries.

173.    Defendants breached their duty of due care and negligently caused injury to the

Plaintiff when on November 15, 2006, Ofc. Wytch, Ofc. Freeman and one unknown police

Officer committed negligence during the arrest and detainment of the Plaintiff when the MPD

Officers grabbed Mr. Hall and threw him on a concrete alley pavement on the ground. The

Plaintiff suffered several injuries including but not exclusive to his shoulder, arms, knees, legs,

thighs, and ankles, and damage to his watch.

174.    On November 15, 2006, Ofc. Wytch, Ofc. Freeman and one unknown MPD Officer

committed negligence during the arrest and detainment of the Plaintiff when the MPD Officers

slammed Mr. Hall's head unto a concrete alley pavement on the ground causing injury to his

head, forehead, scalp, and face.

175.    The Plaintiff is therefore entitled to recover money damages to compensate Mr. Hall

for his injuries as the result of Defendants,' Ofc. Wytch, Ofc. Freeman and an unknown MPD

Officer intentional, reckless, and malicious breach of duty which resulted in the Plaintiff's

injuries.

176.    The Plaintiff suffered several injuries to his head, forehead and including but not

exclusive to his shoulder, arms, knees, legs, thighs, and ankles, and damage to his watch. The

Plaintiff had pain and suffering as the result of his head being slammed to the concrete alley

pavement on the ground. As a result of the injuries Mr. Hall suffered by the use of force by

the MPD Officers Mr. Hall suffers from reoccurring headaches, twitches consisting of

involuntarily head jerks, dizziness and frequent blurred vision.

177.    Plaintiff suffered and continuous to suffer from discomfort, inconvenience,

annoyance, pain and suffering, humiliation, embarrassment, nervousness, injury to

his reputation, fright, mental distress, mental suffering, and mental anguish.

178.    Mr. Hall also complains of feeling early signs of depression such as a sense

of helplessness and hopelessness, depressed mood, loss of interest in the activities

of daily living, unusual irritability and a diminished ability to think or concentrate.

179.    As a result of the MPD Officers' actions, the Plaintiff suffered and continues to suffer

from pain, emotional distress, and psychological trauma.

180.    The Plaintiff is therefore entitled to recover money damages to compensate him for his medical expenses, pain and suffering.

181.    On November 15, 2006, Ofc. Wytch, Ofc. Freeman and one unknown police Officer committed negligence during the arrest and detainment of the Plaintiff when the MPD Officers removed Mr. Hall's photo-identification card but although having a duty to properly return the photo-identification card taken from Mr. Hall without his consent, the MPD Officers failed to return the photo-identification card to his wallet resulting in the lost of the photo-identification card.

182.    As a result of the MPD Officer's actions, the Plaintiff had to find a temporary replacement of his photo-identification before being able to re-new the photo-identification card seized by the MPD Officers.

183.    On November 15, 2006, Ofc. Wytch, Ofc. Freeman and one unknown MPD Officer had a continuous duty to exercise due care in the arrest and detainment of the Plaintiff's property and ensuring that the Plaintiff's property was not damaged.

184.    Ofc. Wytch, Ofc. Freeman and one unknown MPD Officer breached that duty when the MPD Officers committed negligence during the arrest and detainment of the Plaintiff when the MPD Officers damaged Mr. Hall's watch when the MPD Officers used excessive and unnecessary force to arrest Mr. Hall.

185.    The Plaintiff's watch which costs more than $200.00 was totally destroyed due to the negligence of the three MPD Officers.

186.    The failure to properly train and supervise MPD Officers in the handling of persons property and the amount of force necessary to effect an arrest without damaging a person's property is unconstitutional and contrary to others rights and Mr. Hall's rights under the U.S.

constitution and the laws and statutes of the District of Columbia, and civil and common law

because the District of Columbia and the MPD fails to train and supervise its employees, and

the failure to train and supervise its employees amounts to a deliberate indifference to an

obvious need for such training, and supervision and the failure to train and supervise MPD

Officers resulted in the MPD Officers being negligent and the damages suffered by Mr. Hall.

187.    In addition to the having a police, custom and practice, and failing to train and

supervise MPD Officers, the District of Columbia, the MPD, Chief Cathy Lanier and the

former Chief Charles Ramsey, that resulted in negligence by the MPD Officers causing

injuries, and damages to Mr. Hall, and the destructuion of Mr. Hall's property, the Defendants

engaged in conduct that was "arbitrary, or conscience shocking, in a constitutional sense" by

having a deliberate indifference to the policies, practices, and customs of the MPD Officers

which ultimately resulted in the violations of the Plaintiff's rights.

## XVI.    TWELVTH CAUSE OF ACTION

### Negligent Training and Supervision – District of Columbia, the Metropolitan Police Department and Chief Cathy Lanier and MPD Supervisors of the Defendant MPD Officers and unknown MPD Officers

188.    Plaintiff hereby realleges and incorporates by reference herein paragraphs 1- 187 of this complaint.

189.    From June of 2004 through March of 2007, the District of Columbia, the Metropolitan Police Department, Chief Cathy Lanier, Chief Charles Ramsey and MPD Supervisors of the Defendant MPD Officers and unknown MPD Officers were under a duty to properly train, supervise, investigate and correct improper actions of MPD Officers but failed  to prevent

deprivations of the Plaintiff's U.S. constitutional rights and rights under the law and statues of

the District of Columbia, the civil and common law and to prevent the Plaintiff from being

subjected to harassment, assaults, battery, false arrests and unreasonable detainments, searches,

seizures and the one false arrest.

190.    The District of Columbia, the Metropolitan Police Department, Chief Cathy Lanier,

Chief Charles Ramsey and MPD Supervisors of the Defendant MPD Officers and unknown

MPD Officers failed to supervise and properly train MPD Officers and the Defendant Officers

to prevent the deprivation of the Plaintiff's rights under the U.S. Constitutional, the law of the

District of Columbia, civil and common law which was an intentional and/or reckless

disregard of the Plaintiff's rights and had and have a policy, practice and custom of

participating in and/or allowing the deprivation of the rights suffered by the Plaintiff alleged in

the above and following paragraphs; the specific policy, practice and customs are listed in the

Plaintiff's FIRST CAUSE OF ACTION, CIVIL RIGHTS CLAIMS UNDER 42 U.S.C. § 1983

Paragraph 44 a-m, and other sections of this complaint and the Plaintiff reasserts those sections

in this paragraph.

191.    The failure to properly train and supervise MPD Officers is unconstitutional and

contrary to others rights, including Mr. Hall's, under the U.S. constitution, the laws and

statutes of the District of Columbia, and civil and common law because the District of

Columbia and the MPD fails to train and supervise its employees, and the failure to train and

supervise its employees amounts to a deliberate indifference to an obvious need for such

training, and supervision and the failure to train and supervise MPD Officers resulted in the

deprivation of the Plaintiff's rights under U.S. Constitutional, the law of the District of

Columbia, civil and common law.

192.    In addition to the having a policy, custom and practice, and failing to train and supervise MPD Officers the District of Columbia, the MPD, Chief Cathy Lanier and the former Chief Charles Ramsey that resulted in the violations of Mr. Hall's rights, the Defendants engaged in conduct that was "arbitrary, or conscience shocking, in a constitutional sense" by having a deliberate indifference to the policies, practices, and customs of the MPD Officers which ultimately resulted in the violations of the Plaintiff's rights.

193.    As a result of the Defendant Officers' intentional and/or reckless acts, the Plaintiff suffered physical injuries, and the Plaintiff suffered and continues to suffer from the from discomfort, inconvenience, annoyance, pain and suffering, humiliation, embarrassment, nervousness, injury to his reputation, fright, mental distress, mental suffering, and mental anguish. As a result of the injuries Mr. Hall suffered by the use of force by the MPD Officers Mr. Hall also suffers from reoccurring headaches, twitches consisting of involuntarily head jerks, dizziness and frequent blurred vision. Mr. Hall also complains of feeling early signs of depression such as a sense of helplessness and hopelessness, depressed mood, loss of interest in the activities of daily living, unusual irritability and a diminished ability to think or concentrate.

194.    Mr. Hall is therefore entitled to money damages to compensate him for his injuries and for the violations of his rights.

## XVII.  THIRTEETH CAUSE OF ACTION

### False Arrest

195.    Plaintiff hereby realleges and incorporates by reference herein paragraphs 1- 194 of this complaint.

196.    On November 15, 2006, Ofc. Wytch, Ofc Freeman, and one unknown MPD Officer handcuffed and arrested the Plaintiff.

197.    On November 15, 2006, one of the MPD Officers arrested Mr. Hall without probable cause or any other legal basis when:

      a.      Both of Mr. Hall's wrists were handcuffed by the MPD Officers and Mr. Hall was prevented from leaving the vicinity of the MPD Officers,

      b.      One of the MPD Officers told Mr. Hall that he was being arrested despite having no probable cause or any legal justification to arrest Mr. Hall,

      c.      Mr. Hall's watch and belt were removed from his body,

      d.      The MPD Officers discussed among themselves that that they needed a knife to cut off Mr. Hall's shoe strings,

      e.      Mr. Hall overheard one of the MPD Officers discuss with a dispatch person an arrangement for the pick up of the Mr. Hall, and

      f.      One of the MPD Officers told the Mr. Hall that someone from transports was on the way to take the Plaintiff to jail.

198.    The District of Columbia, the MPD, Chief Cathy Lanier and former Chief Charles Ramsey have and had a policy, custom and practice of targeting neighborhoods considered hot

spots and violating the rights of individuals and Mr. Hall to be free from false arrests and have

knowledge that MPD Officers continuously falsely arrest individuals by arresting individuals

without probable cause or any other legal basis to do so and have not changed this practice,

policy and custom.

199.    The failure to properly train and supervise MPD Officers in establishing probable cause

or having a legal basis before arresting individuals is unconstitutional and contrary to other

rights under the U.S. constitution and laws and statutes of the District of Columbia, and civil

and common law because the District of Columbia and the MPD fails to train and supervise its

employees, and the failure to train and supervise its employees amounts to a deliberate

indifference to an obvious need for such training, and supervision and the failure to train and

supervise MPD Officers resulted in the MPD Officers falsely arresting Mr. Hall.

200.    In addition to the having a policy, custom and practice, and failing to train and

supervise MPD Officers, the District of Columbia, the MPD, Chief Cathy Lanier and the

former Chief Charles Ramsey, that resulted in the false arrest of Mr. Hall the Defendants

engaged in conduct that was "arbitrary, or conscience shocking, in a constitutional sense" by

having a deliberate indifference to the policies, practices, and customs of the MPD Officers

which ultimately resulted in the violations of the Plaintiff's rights.

201.    As a result of the Defendants' intentional, reckless, and malicious disregard

for the Plaintiff's rights Mr. Hall suffered and continuous to suffer from discomfort,

inconvenience, annoyance, pain and suffering, humiliation, embarrassment,

nervousness, injury to his reputation, fright, mental distress, mental suffering, and

mental anguish.  As a result of the injuries Mr. Hall suffered by the use of force by

the MPD Officers Mr. Hall also suffers from reoccurring headaches, twitches

consisting of involuntarily head jerks, dizziness and frequent blurred vision. Mr.

Hall also complains of feeling early signs of depression such as a sense of

helplessness and hopelessness, depressed mood, loss of interest in the activities of

daily living, unusual irritability and a diminished ability to think or concentrate.

202.    Mr. Hall, is therefore entitled to money damages to compensate him for his

injuries and for the violations of his rights. Mr. Hall is further entitled to punitive

damages from the MPD Officers to punish the MPD Officers for their knowing and

intentional misconduct in violation of his rights and for their willful and malicious

and/or reckless misconduct toward him.

## XVIII. FOURTEENTH CAUSE OF ACTION

### Defamation, Libel and Slander

203.    Plaintiff hereby realleges and incorporates by reference herein paragraphs 1-202 of this

complaint.

204.    On or about July 20, 2006, Mr. Hall was sitting on a bridge in a opened public park at

the 4300 block of Hunt place N.E around 5:27 P.M; while it was still day light. An unknown

MPD Officer told Mr. Hall to leave the park and not return. The unknown MPD Officer also

told Mr. Hall that if Mr. Hall returned to the opened public park again during day light he was

going to arrest Mr. Hall. The unknown MPD Officer told Mr. Hall he knew what he was doing

and stated that he knew Mr. Hall was selling drugs. The unknown MPD intentionally and

maliciously defamed the character of the Plaintiff by making false statements by falsely

asserting that Mr. Hall was engaged in the commission or had been engaged in the commission

of a crime because Mr. Hall was not selling drugs. The statement was made in front of another unknown MPD Officer and at least one other civilian bystander.

205.    On November 15, 2006, an unknown MPD Officer intentionally and maliciously defamed the character of the Plaintiff by making false statements to all persons on the dispatch system that there were a basis to arrest Mr. Hall for committing a criminal offense and in the presence of each other by stating that they had a legal basis to arrest and detain the Plaintiff which were an untrue statements. Those statements clearly when heard ruins the character and reputation of the Plaintiff. The District of Columbia, Chief Cathy Lanier, the former Chief Charles Ramsey and the MPD were aware that MPD Officers have and had a practice and custom of filing false reports; falsely asserting that they have a basis to arrest individuals and were aware of false reports filed by MPD Officers in conspiracies to violate the rights of individuals and has participated in a policy, practice and custom of assisting MPD Officers in protecting their illegal conduct.

206.    On or about November 15, 2006, Ofc. Wytch, Ofc. Freeman and one unknown MPD Officer intentionally and maliciously defamed the character of the Plaintiff by writing false statements and submitting those statements to the MPD asserting that they had a legal basis to arrest, detain, and handcuff Mr. Hall which were untrue statements. That statements clearly when heard ruins the character and reputation of the Plaintiff.

207.    On or about November 15, 2006, Ofc. Wytch, Ofc. Freeman and one unknown Officer defamed the character of the Plaintiff by making false statements that the Plaintiff was not truthful in the statements he made about what occurred on November 15, 2006 when he was beaten and falsely arrested by the three MPD Officers. The MPD Officers stated that Mr. Hall did not have a photo-identification card on him and therefore was dishonest in stating that the

three MPD Officers fail to return the Plaintiff's DC issued photo-identification card where they found it.

208.    The District of Columbia, the MPD, Chief Cathy Lanier and former Chief Charles Ramsey have and had a policy, custom and practice of violating the rights of individuals by defaming the character of individuals including filing false reports that defame the character and reputation of individuals including Mr. Hall's character and reputation and the Defendants have knowledge that MPD Officers continuously falsely arrest individuals by arresting individuals without probable cause or any other legal basis to do so and then file false reports defaming the character and reputation of individuals and have not changed this practice, policy and custom.

209.    The failure to properly train and supervise MPD Officers in establishing procedures to prevent MPD Officers from defaming the character and reputations of individuals or ensuring that the MPD Officer have a legal basis to arrests individuals is unconstitutional and contrary to others rights under the U.S. constitution, laws and statutes of the District of Columbia, and civil and common law because the District of Columbia and the MPD fails to train its employees and supervise its employees, and the failure to train and supervise its employees amounts to a deliberate indifference to an obvious need for such training, and supervision and the failure to train and supervise MPD Officers resulted in the MPD Officers falsely arresting and defaming the character of Mr. Hall by falsely asserting that Mr. Hall engaged in a crime and that there was a legal basis to arrest Mr. Hall which was untrue and when heard and read clearly ruins the character and reputation of Mr. Hall a law abiding citizen, on November 15, 2006, by imputing that he is a criminal.

210.    In addition to the having a policy, custom and practice, and failing to train and supervise MPD Officers the District of Columbia, the MPD, Chief Cathy Lanier and the former Chief Charles Ramsey that resulted in defamation of Mr. Hall character and reputation by the MPD Officers, the Defendants engaged in conduct that was "arbitrary, or conscience shocking, in a constitutional sense" by having a deliberate indifference to the policies, practices, and customs of the MPD Officers which ultimately resulted in the violations of the Plaintiff's rights.

211.    As a result of the Defendants' intentional, reckless, and malicious disregard for the Plaintiff's rights Mr. Hall suffered and continuous to suffer from discomfort, inconvenience, annoyance, pain and suffering, humiliation, embarrassment, nervousness, injury to his reputation, fright, mental distress, mental suffering, and mental anguish. Mr. Hall also complains of feeling early signs of depression such as a sense of helplessness and hopelessness, depressed mood, loss of interest in the activities of daily living, unusual irritability and a diminished ability to think or concentrate.

212.    Mr. Hall, is therefore entitled to money damages to compensate him for his injuries and for the violations of his rights. The Plaintiff is further entitled to punitive damages from the MPD Officers to punish the MPD Officers for their knowing and intentional misconduct in violation of his rights and for their willful and malicious and/or reckless misconduct toward him.

## XIX.    FIFTHTEETH CAUSE OF ACTION

### Intentional Inflection of Emotional Distress

213.    Plaintiff hereby realleges and incorporates by reference herein paragraphs 1- 212 of

this complaint.

214.    From June of 2004 to March of 2007, several Officers of the MPD, as previously listed

in the Plaintiff's FIRST CAUSE OF ACTION, CIVIL RIGHTS CLAIMS UNDER 42 U.S.C.

§ 1983 Paragraph 44 a-m, and other sections of this complaint and the Plaintiff reasserts those

sections in this paragraph, harassed, assaulted, battered and on one occasion falsely arrested,

unreasonably searched and seized the plaintiff, his wallet and photo-identification card, and

denied the Plaintiff his First Amendment right to free speech for no legal reason while he was

sitting in front of his home, walked down the street, or walked to stores to buy items.

215.    From June of 2004 to March of 2007, Officers of the MPD denied the Plaintiff the right

to speak when the MPD Officers repeatedly stopped Mr. Hall to question him when he sat in

front of him home or walked down the street, or walked to stores to buy items.  The MPD

Officers intentional and/or reckless disregards for the rights and welfare of Mr. Hall was

extreme and outrageous conduct causing Mr. Hall severe emotional distress. This caused the

Plaintiff to experience extreme stress, anxiety and nervousness anytime he left his home and/

or was approached by any Officer of the MPD.

216.    From June of 2004 to March of 2007, Officers of the MPD subjected the Plaintiff to

harassment when the MPD Officers repeatedly told the Plaintiff that he had to go home for no

apparent legal reason.  The MPD Officers intentional and/or reckless disregards for the rights

and welfare of Mr. Hall was extreme and outrageous conduct causing Mr. Hall severe

emotional distress. This caused the Plaintiff to experience extreme stress, anxiety, fright and

nervousness anytime he left his home and/ or was approached by any Officer of the MPD.

217.    On November 15, 2006, Officer Wytch, Officer Freeman, and one unknown MPD

Officer intentional and/or reckless disregards for the rights and welfare of Mr. Hall was

extreme and outrageous conduct causing Mr. Hall severe emotional distress the MPD Officers

subjected Mr. Hall to harassment when the MPD Officer falsely arrested the Plaintiff and

unnecessarily detained the Plaintiff when after realizing they did not have a basis to arrest the

Plaintiff the three MPD Officers surrounded the Plaintiff while he was still handcuffed and

backed against a gated fence to intimidate him.

218.    On November 15, 2006, Officer Wytch, Officer Freeman, and one unknown MPD

Officer subjected the Plaintiff to harassment when the MPD Officers persisted in stating that

there are worst things they could have been done to the Plaintiff. The Plaintiff was told by one

of the MPD Officers that the MPD Officers could have done him like the Los Angeles,

California Police Officers did a Mexican man in a widely publicized case, of alleged police

abuse by use of excessive force, in Los Angeles, California.

219.    On November 15, 2006, the conduct of Ofc. Wytch, Ofc. Freeman, and one unknown

officer caused Mr. Hall extreme stress, anxiety, and nervousness because the Plaintiff was less

then a block from his home when he was slammed on the ground, had his head slammed on the

concrete alley cement pavement on the ground, and handcuffed. Mr. Hall's pants were pulled

down by one of the MPD officers displaying the top of his buttocks and underclothing. Many

individuals witnessed this occurring.

220.    Plaintiff was handcuffed and forced to stand against a gated fenced while he was

surrounded by the three MPD Officers. One of the MPD Officers searched in front of the

corner of 3th and T street N.E., although there was no basis to do so. Mr. Hall felt humiliated

and deeply embarrassed because he believed that the MPD Officer was looking for drugs or

other evidence of a crime although Mr. Hall did not possess drugs, was not engaged in any crime or attempting to engage in any crime.

221.    The Plaintiff suffered injuries from the excessive force of the three MPD Officers. The most notable injury was a contusion on his forehead that swelled at least five inches from his hair line to his eyebrow. Mr. Hall suffers from extreme stress, anxiety, fright and nervousness because after being assaulted and battered by the MPD Officers he has felt physically and mentally different.

222.    Mr. Hall suffers frequent headaches, when he gets up from a sitting position or from lying down he felts dizzy and off balance for a few minutes, he has twitches consisting of involuntarily head jerks, dizziness and frequent blurred vision. Mr. Hall also complains of feeling early signs of depression such as a sense of helplessness and hopelessness, depressed mood, loss of interest in the activities of daily living, unusual irritability and a diminished ability to think or concentrate.

223.    As a result of the three MPD Officers actions, the Plaintiff was and has been deeply embarrassed because members of his community witnessed the police officers force upon Mr. Hall and the treatment of him and the way the MPD Officers acted made the Plaintiff look like he was a common street thug and criminal.

224.    The illegal policy, practice and custom of the MPD Officers intentional and/or reckless outrageous and extreme behavior of constant harassment, illegal detainments, searches, seizures, threats, assaults and battery shocks the conscious of the average citizen and is not tolerated in a civilized society. All of the illegal conduct asserted by the Plaintiff in each of the

above numbered paragraphs caused extreme and severe stress, anxiety, fright, and nervousness to Mr. Hall.

225.    Mr. Hall's extreme and severe stress, anxiety, and nervousness have been exhibited by Mr. Hall's fear of leaving his home which he limits the number of times he goes outside.

226.    The unlawful, intentional, malicious and excessive force and conduct by the MPD Officers in violating the Plaintiff's rights from June of 2004 to March of 2007 resulted in the Plaintiff feeling depress about the outrageous and shocking conduct of the MPD Officers. The Plaintiff suffered and continues to suffer from discomfort, inconvenience, annoyance, pain and suffering, humiliation, embarrassment, nervousness, injury to his reputation, fright, mental distress, mental suffering, and mental anguish. As a result of the injuries Mr. Hall suffered by the use of force by the MPD Officers Mr. Hall also suffers from reoccurring headaches, twitches consisting of involuntarily head jerks, dizziness and frequent blurred vision.

227.    The failure to properly train and supervise MPD Officers to prevent the deprivation of Mr. Hall's clearly established rights, privileges and immunities guaranteed under the U.S. constitution and other rights under the laws and statutes of the District of Columbia and the civil and common law is unconstitutional and the MPD fails to train and supervise its employees, and the failure to train and supervise its employees amounts to a deliberate indifference to an obvious need for such training, and supervision and the failure to train and supervise MPD Officers engaging in the illegal conduct that resulted in Mr. Hall's injuries.

228.    In addition to the having a policy, custom and practice, and failing to train and supervise MPD Officers, the District of Columbia, the MPD, Chief Cathy Lanier and the former Chief Charles Ramsey, that resulted in Mr. Hall injuries caused by the outrageous, extreme and shocking conduct of the MPD Officers, the Defendants engaged in conduct that

was "arbitrary, or conscience shocking, in a constitutional sense" by having a deliberate

indifference to the policies, practices, and customs of the MPD Officers which ultimately

resulted in the violations of the Plaintiff's rights.

229.    Mr. Hall, is therefore entitled to money damages to compensate him for his injuries and

for the violations of his rights by the MPD Officers.  The Plaintiff is further entitled to punitive

damages from the MPD Officers to punish the MPD Officers for their knowing and intentional

misconduct in violation of his constitutional rights and for their willful and malicious and/or

reckless misconduct toward him.

## XX.    SIXHTHTEETH CAUSE OF ACTION

### Abuse of Process

230.    Plaintiff hereby reasserts paragraphs 1- 229 of this complaint, as though fully set forth

here.

231.    The District of Columbia, the MPD, Chief Cathy Lanier and former Chief Charles

Ramsey have and had a policy, custom and practice of targeting neighborhoods considered hot

spots and violating the constitutional protected rights of individuals to be free from false

arrests and have knowledge that MPD Officers continuously unreasonably detain individuals

by detaining individuals without probable cause or any other legal basis to do so and have not

changed this practice, policy and custom.

232.    The policy, custom and practice of the MPD Officers are an abuse of the

law enforcement process and judicial process.  MPD Officers willfully engaged in

the various violations of Mr. Hall rights by illegal searches, seizures, detainments,

threats of bodily injury, harassment, assaults, battery, and suppression of his right to

free speech, and one and on one occasion falsely arresting him, and caused the

destruction of the property Mr. Hall, for the ulterior motive of suppressing criticism

of MPD Officers conduct, cleaning up problem neighborhoods, to prevent the

visibility of young, black males in neighborhoods labeled hot spots which is a

perversion of the legal system without having probable cause, knowledge or

reasonable suspicion that Mr. Hall is engaging in criminal activity.

233.    The Defendants perverted the legal system and abuse their police powers

by accomplishing law enforcements ends which the District of Columbia is without

the power to do so under the regular purview of the judicial process and also

attempting to compel and on several occasions actually compelling Mr. Hall to not

exercise his rights protected under law which the defendant's could not legally do

otherwise in the regular conduct of law enforcement and judicial proceedings.

234.    The failure to properly train and supervise MPD Officers in ensuring that no abuse of

process occurs is unconstitutional and contrary to others rights and Mr. Hall's rights under the

U.S. constitution, laws and statutes of the District of Columbia, and civil and common law

because the District of Columbia and the MPD fails to train its employees and supervise its

employees, and the failure to train and supervise its employees amounts to a deliberate

indifference to an obvious need for such training, and supervision and the failure to train and

supervise MPD Officers resulted in the MPD Officers abuse of process resulting in the

deprivations of Mr. Hall's clearly established rights.

235.    In addition to having a policy, custom and practice, and failing to train and supervise

MPD Officers, the District of Columbia, the MPD, Chief Cathy Lanier and the former Chief

Charles Ramsey, that resulted in the MPD Officers abusing process resulting in the

deprivations of Mr. Hall's clearly established rights, the defendants engaged in conduct that

was "arbitrary, or conscience shocking, in a constitutional sense" by having a deliberate indifference to the policies, practices, and customs of the MPD Officers which ultimately resulted in the violations of the Plaintiff's rights.

236.    As a result of the Defendants' intentional, reckless, and malicious disregard for the Plaintiff's rights the Plaintiff suffered and continuous to suffer from discomfort, inconvenience, annoyance, pain and suffering, humiliation, embarrassment, nervousness, injury to his reputation, fright, mental distress, mental suffering, and mental anguish. As a result of the injuries Mr. Hall suffered by the use of force by the MPD Officers Mr. Hall also suffers from reoccurring headaches, twitches consisting of involuntarily head jerks, dizziness and frequent blurred vision. Mr. Hall also complains of feeling early signs of depression such as a sense of helplessness and hopelessness, depressed mood, loss of interest in the activities of daily living, unusual irritability and a diminished ability to think or concentrate.

237.    Mr. Hall, is therefore entitled to money damages to compensate him for his injuries and for the violations and the Plaintiff is further entitled to punitive damages from the MPD Officers to punish the MPD Officers for their knowing and intentional misconduct in violation his constitutional rights and for their willful and malicious and/or reckless misconduct toward him.

**WHEREFORE**, Plaintiff, Joel Thomas Hall, hereby sues Defendants the District of Columbia, the Metropolitan Police Department, Chief Cathy Lanier, Officer Venson Wytch, Officer Jose Freeman, one unknown police Officer, and other several unknown MPD Officers, and claims the sum of:

1.} pecuniary damages to fully compensate Plaintiff for medical and psychiatric treatment necessitated by Defendants' acts;

2.} damages in excess of $2.5 million dollars (two and a half million dollars);

3.} punitive damages in the amount to be determined by the court;

4.) attorney's fees per 42 U.S.C. §1983: and

5.) any other relief which this court decides is necessary in the interest of justice.

### XIX. Jury Demand

Plaintiff demand trial by a jury of 12 persons on all issues triable by jury.

Respectfully submitted,
Dated this 25th day of May, 2007

*Joel Hall*

Joel T. Hall
1904 3rd Street N.E., #4
Washington, DC  20002
202-341-6260

## VERIFICATION

I, Joel T. Hall acknowledge that the above complaint is accurate and verify under penalty of perjury that the facts which have been alleged are true to the best of my knowledge. Executed this 30th day of May 2007.

_Joel Hall_

Joel T. Hall

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this Amend Complaint was Efiled toSteven Anderson, 441 4th Street N.W., Washington, D.C. 20001 on May 26th, 2007 and mailed first-class, postage prepaid, on this __30th__ day of May to:

Officer Jose Freeman
1805 Bladensburg Road, N.E.
Washington, D.C. 20002

Officer Venson Wytch
1805 Bladensburg Road, N.E.
Washington, D.C. 20002

Respectfully Submitted,

_Joel Hall_

Joel T. Hall